[No. B184630. Second Dist., Div. Eight. Sept. 18, 2006.]

PHILIP KENT COHEN, Plaintiff and Respondent, v.
DIRECTV, INC., Defendant and Appellant.

COUNSEL

Kirkland & Ellis, Michael E. Baumann, Melissa D. Ingalls and Becca Wahlquist for Defendant and Appellant.

King & Ferlauto, William T. King and Thomas M. Ferlauto for Plaintiff and Respondent.

OPINION

BOLAND, J.—

## SUMMARY

A subscriber to services offered by a satellite television programming company filed a class action lawsuit against the company, alleging it covertly degraded some of its high definition television transmissions. The company moved to compel arbitration under the arbitration clause in its customer agreement with the subscriber, which prohibited class litigation of claims in arbitration. The trial court denied the motion and the company timely appealed. We affirm the trial court's order refusing to compel arbitration because the prohibition on class litigation in the arbitration clause is unconscionable and unenforceable.

## FACTUAL AND PROCEDURAL BACKGROUND

DIRECTV, Inc., broadcasts satellite television programming to homes. Phillip Kent Cohen began receiving basic services from DIRECTV in February 1997. With his first bill he received the customer agreement then in effect.

Although that agreement contained no arbitration clause, its change of terms clause allowed DIRECTV to unilaterally modify the agreement. Two months later, along with his April 15, 1997 monthly bill, Cohen received an amended customer agreement containing an arbitration clause.

Approximately six years later, in July 2003, Cohen upgraded to DIRECTV's high definition television (HDTV) programming, which provides better image quality than its standard programming. DIRECTV's customers were required to pay additional monthly fees of $10.99 and buy additional equipment costing, in some cases, more than $1,000.

Cohen asserts that, in September 2004, DIRECTV degraded some of its HDTV channels by switching them to a lower, nonstandard resolution.[1] Five channels were affected: HBO-HD, HDNet Movies, HDTV Pay Per View, BravoHD, and Showtime HD. DIRECTV also reduced bandwidth on some channels.[2]

A month later, in October 2004, DIRECTV sent Cohen a revision to its customer agreement.[3] The revision included changes to the arbitration clause which prohibited the joinder or class litigation of claims in arbitration.[4]

Cohen filed a class action suit against DIRECTV in November 2004. In his first cause of action, Cohen alleged violation of the California Consumers Legal Remedies Act (CLRA). (Civ. Code, § 1750 et seq.) He alleged DIRECTV violated the CLRA and damaged its HDTV customers by broadcasting a below standard signal, contrary to its advertisements. Cohen sought damages for the costs of equipment and monthly subscription fees, restitution, an injunction preventing DIRECTV from representing its channels as HDTV, punitive damages, and reasonable attorney fees. In a second cause of action under Business and Professions Code section 17200, Cohen alleged

---

[1] "Resolution" refers to the number of lines that are used to build the image seen by the eye. DIRECTV's HDTV service consists of channels broadcast using two different HDTV resolution standards. DIRECTV reduced the resolution used on certain channels that were broadcast using one of the two standards.

[2] Bandwidth is measured in millions of bits per second (Mbps). The bandwidth was allegedly reduced on an unspecified number of channels from 19.4 Mbps to "as low as" 6.6 Mbps.

[3] DIRECTV sent Cohen revised versions of the customer agreement in April 1997, November 1999, and December 2001, all containing some form of arbitration clause.

[4] The agreement states: "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in private attorney general capacity. A court may sever any portion of Section 9 [the dispute resolution clause] that it finds to be unenforceable, except for the prohibition on class or representative arbitration."

DIRECTV's conduct constituted unlawful, unfair or fraudulent business practices, and sought an injunction and restitution.

DIRECTV moved to compel arbitration.[5] Cohen's opposition argued the arbitration clause was unenforceable because (1) DIRECTV's unilateral addition of an arbitration clause in April 1997 did not result in a binding agreement to arbitrate, and (2) the ban on class litigation of claims in arbitration was unconscionable. The trial court denied DIRECTV's motion, concluding the arbitration clause was "procedurally and substantively unconscionable, against public policy and unenforceable." Specifically, the court found, inter alia:

(1) The arbitration clause was procedurally unconscionable because DIRECTV unilaterally inserted the original arbitration clause in its customer agreement in April 1997, notifying Cohen by including the amended agreement with his monthly bill, and informing him he could accept it or cancel his service. Citing *Badie v. Bank of America* (1998) 67 Cal.App.4th 779 [79 Cal.Rptr.2d 273], the court concluded DIRECTV added an entirely new term, not addressed in or contemplated by the original customer agreement, and that an arbitration clause included in a bill stuffer was "not a legitimate method to revoke [Cohen's] constitutional right to a jury trial . . . ."

(2) The arbitration clause was substantively unconscionable under principles announced in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*), which held that a class action waiver in a consumer contract of adhesion was, under the circumstances of that case, unconscionable and unenforceable.

DIRECTV filed a timely appeal from the trial court's order.

## DISCUSSION

We agree with the trial court that the provision in the arbitration clause prohibiting class or representative claims in arbitration (class action waiver) is unconscionable and unenforceable. Because DIRECTV's customer agreement expressly prohibits the severance of the class action waiver from

---

[5] DIRECTV's motion consisted of a demurrer to the complaint and, in the alternative, a motion to compel arbitration. The trial court overruled the demurrer at the hearing on the motion.

the remainder of the arbitration clause, the entire arbitration clause is unenforceable.

We begin our analysis with the principles announced by the Supreme Court in *Discover Bank, supra,* 36 Cal.4th 148. Before turning to that case, however, several preliminary comments on matters raised by the parties are in order.

First, DIRECTV argues at length that the trial court lacked jurisdiction to rule on the enforceability of the class action waiver, because it found that Cohen did not agree to the arbitration clause that DIRECTV unilaterally added to Cohen's customer agreement in 1997. According to DIRECTV, because the court in effect concluded no agreement to arbitrate was formed in the first instance, it should have ended its analysis and denied DIRECTV's motion to compel arbitration on that basis. The court's further ruling on the unenforceability of the class action waiver was an "advisory opinion" on a "hypothetical issue" in a "non-justiciable dispute," and for that reason should be reversed by this court. We find DIRECTV's argument both puzzling and without legal basis. It is perplexing because DIRECTV contends the trial court was wrong to find no agreement to arbitrate was formed, and asks this court to hold the parties did agree to arbitrate their disputes. If they did agree to arbitrate, the enforceability of the clause, including its class action waiver, would necessarily be directly at issue. Moreover, the trial court did not analyze the matter in terms of whether a contract to arbitrate was formed in the first instance. Rather, it expressly found that the agreement was procedurally unconscionable because of DIRECTV's unilateral insertion of the original arbitration clause in a bill stuffer. In any event, there is no legal merit to the claim that the enforceability of the class action waiver is "a purely hypothetical and non-justiciable dispute." The issue was directly presented to the trial court in Cohen's opposition to DIRECTV's motion to compel arbitration. DIRECTV cannot seek enforcement of an arbitration clause with a class action waiver and at the same time contend the court has no jurisdiction to rule on the enforceability of that clause. Nothing was "hypothetical" about the trial court's ruling.

Second, the validity and unconscionability of an arbitration agreement are matters of law subject to de novo review where, as here, no material facts are in dispute. (*Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 713–714 [129 Cal.Rptr.2d 659].) Moreover, if a trial court's order is correct on any applicable theory of law, the order will be affirmed regardless of the basis for the trial court's conclusion, as we review the correctness of the order, not the reasons given for the order. (*Estate of Beard* (1999) 71

Cal.App.4th 753, 776 [84 Cal.Rptr.2d 276].) Because we conclude the class action waiver is unenforceable, and because it cannot be severed from the arbitration clause, we need not and do not decide whether the parties formed a valid agreement to arbitrate in 1997, when DIRECTV first amended its customer agreement to include an arbitration clause, or whether Cohen effectively ratified the arbitration clause by continuing to use DIRECTV's programming services for the ensuing seven years.[6]

We turn now to the principles governing the enforceability of the class action waiver in DIRECTV's customer agreement, as established in *Discover Bank,* and then apply those principles to this case.

## A. Discover Bank v. Superior Court

In *Discover Bank, supra,* 36 Cal.4th 148, the Supreme Court began its analysis by reviewing the justifications for class action lawsuits and the important role of class action remedies under California law in deterring and redressing wrongdoing, beginning 35 years ago with Justice Mosk's much quoted opinion in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964], and concluding with the Supreme Court's endorsement of classwide arbitration in *Keating v. Superior Court* (1982) 31 Cal.3d 584, 613–614 [183 Cal.Rptr. 360, 645 P.2d 1192] (authorizing class-wide arbitration in a case where the arbitration clause was silent on the issue).[7] (*Discover Bank, supra,* 36 Cal.4th at pp. 156–157.) The court then turned to the question whether a class action waiver might be unenforceable as contrary to public policy or unconscionable, and quoted at length from a Court of Appeal case involving an arbitration clause and a class action waiver "virtually identical" (*id.* at p. 155) to the waiver before the court in *Discover Bank:* " '[The class action waiver] provision is clearly meant to prevent customers . . . from seeking redress for relatively small amounts of money . . . . Fully aware that few customers will go to the time and trouble of suing in small claims court, [the bank] has instead sought to create for itself

---

[6] In *Badie v. Bank of America, supra,* 67 Cal.App.4th 779, the court held that no agreement to arbitrate was formed when the bank, relying on a clause giving it the unilateral right to change its customer account agreements at any time, added an arbitration clause by means of a bill stuffer. The court held the bank's unilateral right to modify the agreement did not allow the bank to add an entirely new kind of term, on a subject not addressed in the original agreement and not within the reasonable contemplation of the parties when they entered the agreement, particularly where the new term deprives the other party of the right to a jury trial. (*Id.* at p. 796.) In *Badie,* however, the arbitration clause was challenged shortly after the bank began sending the bill stuffers with the new clause to its customers, not seven years later.

[7] *Keating v. Superior Court, supra,* 31 Cal.3d 584 was overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852].

virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights. [¶] . . . The clause is not only harsh and unfair to [bank] customers who might be owed a relatively small sum of money, but it also serves as a disincentive for [the bank] to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, [the bank] has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. . . . [¶] . . . This is not only substantively unconscionable, it violates public policy by granting [the bank] a "get out of jail free" card while compromising important consumer rights.' " (*Discover Bank, supra,* 36 Cal.4th at pp. 159–160, quoting *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1101 [118 Cal.Rptr.2d 862] (*Szetela*).)[8]

▮ Turning to the dispute before it, *Discover Bank* recapitulated the principles of unconscionability, noting its procedural and substantive elements. The procedural element focuses on oppression or surprise due to unequal bargaining power, and generally takes the form of a contract of adhesion. (*Discover Bank, supra,* 36 Cal.4th at p. 160.) The substantive element focuses on overly harsh or one-sided results, with substantively unconscionable terms generally described as " 'unfairly one-sided.' "[9] (*Discover Bank,* at p. 160.)

---

[8] *Discover Bank* also cited and discussed *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 [108 Cal.Rptr.2d 699] (*AOL*), in which the court refused to enforce choice of law and forum selection clauses in America Online's subscriber agreement, because the chosen state (Virginia) did not allow consumer lawsuits to be brought as class actions. (*Id.* at p. 18.) The *AOL* court relied in part on the CLRA, which provides class action relief for consumers and voids any attempted waiver of rights under the CLRA as contrary to public policy. (*AOL, supra,* 90 Cal.App.4th at pp. 4, 15; Civ. Code, §§ 1781, 1751.) In this case, Cohen alleged violation of the CLRA and asserted the CLRA renders the class action waiver void. At oral argument, DIRECTV asserted that the CLRA is preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), citing *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126 (*Ting*). *Ting* held that, because the CLRA applies to a limited set of transactions, it is not a law of general applicability and its application is therefore preempted by the FAA, which makes agreements to arbitrate enforceable " 'save upon such grounds as exist at law or in equity for the revocation of *any contract.*' " (*Ting,* at pp. 1147–1148, quoting 9 U.S.C. § 2, italics added in *Ting.*) Because we find the class action waiver in DIRECTV's customer agreement unconscionable, we need not address the CLRA issue. (See *Discover Bank, supra,* 36 Cal.4th at p. 153 [the law in California is that class action waivers in consumer contracts of adhesion are in some circumstances unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration, and the FAA does not preempt California law in this respect].)

[9] Procedural and substantive unconscionability are evaluated on a sliding scale in relation to one another. "[T]he more substantively oppressive the contract term, the less evidence of

The court then "agree[d] that at least some class action waivers in consumer contracts are unconscionable under California law." (*Ibid.*) The court explained that:

—When a consumer is given an amendment to a customer agreement in the form of a bill stuffer that he would be deemed to accept if he did not close his account, "an element of procedural unconscionability is present." (*Discover Bank, supra,* 36 Cal.4th at p. 160.)

—While adhesive contracts are generally enforced, class action waivers found in those contracts may also be substantively unconscionable "inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy." (*Discover Bank, supra,* 36 Cal.4th at pp. 160–161.)

—Class action waivers are not, in the abstract, exculpatory clauses. However, because damages in consumer cases are often small, and because the wrongful exaction of " ' "a dollar from each of millions of customers" ' " will result in a handsome profit, the class action is often the only effective way to halt and redress such exploitation. (*Discover Bank, supra,* 36 Cal.4th at p. 161.)

—Class action waivers are "indisputably one-sided," as " 'credit card companies typically do not sue their customers in class action lawsuits.' " (*Discover Bank, supra,* 36 Cal.4th at p. 161, quoting *Szetela, supra,* 97 Cal.App.4th at p. 1101.)

—"Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." (*Discover Bank, supra,* 36 Cal.4th at p. 161.)

■ The court summarized: "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party

procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669].)

'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.)

### B. Application of Discover Bank *principles to the class action waiver in* DIRECTV's *customer agreement.*

*Discover Bank* elucidated a set of circumstances under which class action waivers are unconscionable and unenforceable. While it did not hold "that all class action waivers are necessarily unconscionable," (*Discover Bank, supra,* 36 Cal.4th at p. 162) neither did it hold that case action waivers are unconscionable only in the circumstances it described. The question for this court is how closely DIRECTV's class action waiver approximates the circumstances described in *Discover Bank* and, to the extent the circumstances are different, whether they nonetheless require a conclusion the class action waiver is unconscionable.

### 1. The circumstances surrounding DIRECTV's class action waiver provision are comparable to those described in *Discover Bank.*

We conclude that the class action waiver found in DIRECTV's customer agreement meets the indicia identified in *Discover Bank,* such that the waiver in practice has the potential effect of "exempti[ng DIRECTV] 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' " (*Discover Bank, supra,* 36 Cal.4th at p. 163, quoting Civ. Code, § 1668.)

First, DIRECTV's customer agreement is "a consumer contract of adhesion." (*Discover Bank, supra,* 36 Cal.4th at p. 162.) As in *Discover Bank,* Cohen was "given an amendment to [his customer] agreement in the form of a 'bill stuffer' . . . ." (*Id.* at p. 160.) Likewise, he was "deemed to accept [it] if he did not close his account . . . ."[10] (*Ibid.*)

---

[10] In addition, under DIRECTV's customer agreement, customers may be faced with termination fees if they cancel their service, and the agreement does not provide for reimbursement of customers' equipment costs if they opt not to accept all amendments DIRECTV chooses to send. These circumstances make opting out more burdensome on DIRECTV's customers than was the case for cardholders in *Discover Bank,* heightening the evidence of procedural unconscionability.

Second, customer agreements with television programming providers, like other consumer contracts of adhesion, necessarily occur "in a setting in which disputes between the contracting parties predictably involve small amounts of damages . . . ." (*Discover Bank, supra,* 36 Cal.4th at p. 162.) The fees for the high-definition services Cohen asserts are compromised or degraded by DIRECTV are $10.99 a month. DIRECTV's customer agreements, like the cardholder contracts in *Discover Bank* or other contracts under which consumers are provided with continuing services for monthly fees, are replete with examples of fees in small amounts, where potential disputes between the provider and the customer would necessarily involve "small amounts of damages . . . ." (*Ibid.*)

DIRECTV asserts that the individual stakes are higher in this case, because the damages Cohen alleged included, in addition to the $10.99 monthly fee, the cost for the decoder box the consumer must purchase in order to receive DIRECTV's high definition package—an expense amounting, in some instances, to more than $1,000. We are not persuaded that this additional element of damages in any way affects the foundational premise that DIRECTV's class action waiver occurs in a setting where disputes between the contracting parties "predictably involve small amounts of damages." (*Discover Bank, supra,* 36 Cal.4th at p. 162.) While $1,000 is not an insignificant sum, many consumers of services such as those offered by DIRECTV may not view that amount as sufficient " ' " 'to warrant individual litigation,' " ' " and certainly it is not sufficient to obtain legal assistance in prosecuting the claim. (*Discover Bank, supra,* 36 Cal.4th at p. 157.) In short, the class action device remains, in our view, the only practicable way for consumers of services such as DIRECTV's to deter and redress wrongdoing of the type Cohen alleges. Damages that may or may not exceed $1,000 do not take DIRECTV's class action waiver outside "a setting in which disputes between the contracting parties predictably involve small amounts of damages . . . ."[11] (*Id.* at p. 162.)

■ Third, a class action waiver is unconscionable under *Discover Bank* indicia when, along with the two criteria discussed above, "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money . . . ." (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.) In this case, Cohen alleged DIRECTV, after representing its high-definition package

---

[11] Cohen's actual damages may or may not exceed $1,000. His complaint alleges that only five of the channels he received were affected, and the effect on those channels was a 33 percent reduction in image quality. It is thus not inconceivable that his damages could constitute some fractional amount of his total outlay of funds.

would provide "astonishing picture clarity" consistent with specified standards and bandwidth, reduced its HDTV transmission quality by 33 percent to nonstandard levels. DIRECTV points out Cohen alleged no "hidden charges" or "undisclosed costs," and his complaint showed he "noticed the drastic reduction of image quality . . . ." According to DIRECTV, no "scheme to deliberately cheat large numbers of consumers" can exist because satellite television customers would immediately perceive any image quality reduction on their television screens. DIRECTV makes a distinction without a difference. Whether a company improperly overcharges its customers $29, or noticeably reduces its customers' television image quality by a like amount in relation to the quality for which they have paid, monetary harm occurs. Moreover, *Discover Bank* nowhere uses the terms "hidden" or "secret" to describe the kind of schemes that the class action device should be available to remedy. In every case, whether sooner or later, the scheme becomes apparent to the consumer, whether it is the appearance on an invoice of an improper charge or the appearance on the television of an inferior image. In either case, the customer is being deliberately cheated, because he is either paying for something he has not agreed to pay for (the $29 late fee in *Discover Bank*) or paying for something he is not receiving (image clarity from DIRECTV). In other words, a deliberate practice that deprives consumers of money or services is no less deserving of opprobrium simply because it may be more readily detectable by the consumer. The wrongdoer still profits, albeit perhaps for a shorter time, and the consumer still loses "individually small sums of money . . . ." (*Discover Bank, supra,* 36 Cal.4th at p. 163.)

## 2. Other post-*Discover Bank* precedents have found class action waiver clauses unconscionable.

After *Discover Bank,* several courts of appeal have found class action waivers unenforceable, both in circumstances similar to and different from those in *Discover Bank.* In particular:

—In *Aral v. EarthLink, Inc.* (2005) 134 Cal.App.4th 544 [36 Cal.Rptr.3d 229], plaintiffs alleged EarthLink charged fees to customers for digital subscriber line (DSL) service for a period prior to providing customers with the equipment necessary to utilize the service. The Court of Appeal found the class action waiver in EarthLink's arbitration clause unconscionable, finding (a) the " 'take it or leave it' " terms of the agreement with no opportunity to opt out was "quintessential procedural unconscionability," and (b) with respect to substantive unconscionability, the gravamen of the complaint was

that numerous consumers were cheated out of small sums of money through deliberate behavior. (*Id.* at p. 557.)

—In *Klussman v. Cross Country Bank* (2005) 134 Cal.App.4th 1283, 1287 [36 Cal.Rptr.3d 728], the court held a hidden waiver of the right to bring classwide arbitration was unconscionable. (The arbitration clause did not mention class actions, but was the functional equivalent of a waiver because the designated arbitration rules prohibited classwide arbitration unless all parties consented.) In *Klussman,* the complaint alleged that the bank had earned hundreds of millions of dollars by (a) offering credit cards to low credit individuals, and (b) subsequently engaging in unlawful practices "such as misrepresenting payoff charges, imposing unauthorized fees, charging late fees for timely payments, automatically subscribing customers to unauthorized and costly programs and using abusive and harassing tactics in collecting fees and charges." (*Ibid.*) *Klussman* observed that *Discover Bank* "confirmed the fundamental nature of the policy favoring class actions when it quoted from *Szetela,*" and concluded that class action waivers, "especially in the context of a 'take it or leave it' arbitration clause," were contrary to fundamental public policy in California. (*Id.* at pp. 1297–1298.)

—In *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396 [34 Cal.Rptr.3d 659] (*Mailbox Center*), the court found a ban on class actions in the arbitration clauses of franchise agreements was unconscionable, without regard to the size of the claims.[12] In *Mailbox Center,* plaintiff franchisees raised numerous statutory and common law claims challenging the conversion of their stores into a new format. (*Id.* at p. 399.) Some of the franchise agreements banned group arbitration and others did not. The franchisees argued the ban on classwide arbitration was unconscionable because it would lead to costly and duplicative proceedings they could not afford, and because the available relief prescribed under the clause was unduly limited. (*Id.* at p. 404.) The Court of Appeal found the trial court's ruling rejecting the unconscionability argument "substantively incorrect because [the trial court] disregarded applicable law concerning adhesion contracts in the franchise situation, where broad statutory arguments, implicating the public interest, are raised." (*Id.* at p. 410.) The court stated the trial court should have accepted the franchisees' showing that group arbitration would be a preferred means of dispute resolution, and ordered the trial court

---

[12] Approximately 35 franchisees apparently were involved. (*Mailbox Center, supra,* 133 Cal.App.4th at p. 399, fn. 1.) Their complaint sought "extensive monetary and injunctive relief (over $470,000 lost investment, etc.)." (*Id.* at p. 404, fn. 4.)

to strike as unconscionable those provisions of the arbitration clauses that prohibited representative or class actions. (*Id.* at pp. 411, 417.)[13]

## CONCLUSION

 In sum, post-*Discover Bank* cases make clear that class action waivers may be found unconscionable in a variety of circumstances, some of them not confined to small sums of money. We see no principled basis for distinguishing the circumstances of this case from those described in *Discover Bank*. The class action waiver in DIRECTV's customer agreement appears in a consumer contract of adhesion presented to Cohen on a take-it-or-leave-it basis. The class action waiver is "indisputably one-sided," as DIRECTV would have no occasion to use the class action device in disputes with its customers. DIRECTV is alleged to have reduced the high-definition resolution for which its customers pay DIRECTV "individually small sums of money." In our view, the sums involved are sufficiently small that the class action is likely the only effective way to redress conduct that deprives DIRECTV's customers of the full high-definition services for which they are paying. Because DIRECTV's prohibition on class claims in arbitration effectively operates to insulate DIRECTV from liability for its conduct, the class action waiver is unconscionable and unenforceable.

---

[13] DIRECTV relies on *Provencher v. Dell, Inc.* (C.D.Cal. 2006) 409 F.Supp.2d 1196, in which the district court enforced a class action waiver in an arbitration agreement. (*Id.* at p. 1199.) In 2001, Provencher brought a Dell computer with extended service warranty for over $1600. Before he purchased the computer, Provencher agreed to the contract terms, which also allowed Provencher to return the computer within 30 days and cancel the agreement if he was not satisfied or found any agreement provisions unacceptable. He did not exercise his right to rescind, and almost four years later, filed a nationwide class action, alleging "a vast array of warranty, contract, tort, and statutory claims." (*Id.* at p. 1202.) The court found that Texas law governed the dispute, and that enforcing Texas law would not violate a fundamental policy of California. (*Id.* at p. 1201.) The court concluded the facts bore "absolutely no resemblance to those that the California Supreme Court found so troubling in *Discover Bank*." (*Id.* at p. 1203.) The court observed, inter alia, that Provencher's claims did not involve a small amount of money, and the clause did not operate to exempt Dell from the consequences of its alleged wrongdoing. (*Id.* at pp. 1202, 1203.) We do not find *Provencher*'s analysis compelling, particularly as to the "significant amount of money, most likely hundreds of millions of dollars," involved, because the court focused on aggregate amounts, not individual amounts. (*Id.* at p. 1202 & fn. 7.) In any event, the case has numerous significant differences from the class action waiver in this case, not the least of which is that Provencher entered into his transaction with full knowledge of its terms, and indeed with a 30-day rescission option, rather than having the class action waiver presented by means of amendment as a "take it or leave it" bill stuffer.

## DISPOSITION

The trial court's denial of the motion to compel arbitration is affirmed.

Philip Kent Cohen is to recover his costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.