**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOE DOUGLAS, on behalf of himself and on behalf of all others similarly situated,
                        *Petitioner,*

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,
                        *Respondent,*

TALK AMERICA INC., a Pennsylvania corporation,
            *Real Party in Interest.*

No. 06-75424

D.C. No.
CV-06-03809-GAF

OPINION

On Petition for Writ of Mandamus
to the United States District Court
for the Central District of California

Argued and Submitted
June 7, 2007—Pasadena, California

Filed July 18, 2007

Before: Alex Kozinski, Ronald M. Gould and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion

**COUNSEL**

J. Paul Gignac, Katherine Donoven and Lisa Johnston Nicholes, Arias, Ozzello & Gignac, LLP, Santa Barbara, California; David R. Greifinger, The Law Offices of David R. Greifinger, Santa Monica, California; Howard Andrew Goldstein, Law Offices of Howard A. Goldstein, Van Nuys, California, for the petitioner.

Paul F. Donsbach and Jennifer L. Andrews, Kutak Rock LLP, Irvine, California; Bartholomew L. McLeay, Jeremy Fitzpatrick and Paul R. Gwilt, Kutak Rock LLP, Omaha, Nebraska, for real party in interest.

**OPINION**

PER CURIAM:

We consider whether a service provider may change the terms of its service contract by merely posting a revised contract on its website.

**Facts**

Joe Douglas contracted for long distance telephone service with America Online. Talk America subsequently acquired this business from AOL and continued to provide telephone service to AOL's former customers. Talk America then added four provisions to the service contract: (1) additional service

charges; (2) a class action waiver; (3) an arbitration clause; and (4) a choice-of-law provision pointing to New York law. Talk America posted the revised contract on its website but, according to Douglas, it never notified him that the contract had changed. Unaware of the new terms, Douglas continued using Talk America's services for four years.

After becoming aware of the additional charges, Douglas filed a class action lawsuit in district court, charging Talk America with violations of the Federal Communications Act, breach of contract and violations of various California consumer protection statutes. Talk America moved to compel arbitration based on the modified contract and the district court granted the motion. Because the Federal Arbitration Act, 9 U.S.C. § 16, does not authorize interlocutory appeals of a district court order compelling arbitration, Douglas petitioned for a writ of mandamus.

## Analysis

**[1]** Because a writ of mandamus is an extraordinary remedy, we have developed five factors that cabin our power to grant the writ:

1. "The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires."

2. "The petitioner will be damaged or prejudiced in a way not correctable on appeal."

3. "The district court's order is clearly erroneous as a matter of law."

4. "The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules."

5.   "The district court's order raises new and impor-
     tant problems, or issues of law of first impres-
     sion."

*Bauman* v. *U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir.
1977).

The third factor is a necessary condition for granting a writ
of mandamus. *Executive Software N. Am., Inc.* v. *U.S. Dist.
Court*, 24 F.3d 1545, 1551 (9th Cir. 1994). But "all five fac-
tors need not be satisfied at once." *Valenzuela-Gonzalez* v.
*U.S. Dist. Court*, 915 F.2d 1276, 1279 (9th Cir. 1990). If the
district court clearly erred, we determine whether the four
additional factors "in the mandamus calculus point in favor of
granting the writ." *Executive Software*, 24 F.3d at 1551.

[2] **1.** Douglas alleges that Talk America changed his ser-
vice contract without notifying him. He could only have
become aware of the new terms if he had visited Talk Ameri-
ca's website and examined the contract for possible changes.
The district court seems to have assumed Douglas had visited
the website when it noted that the contract was available on
"the web site on which Plaintiff paid his bills." However,
Douglas claims that he authorized AOL to charge his credit
card automatically and Talk America continued this practice,
so he had no occasion to visit Talk America's website to pay
his bills. Even if Douglas had visited the website, he would
have had no reason to look at the contract posted there. Parties
to a contract have no obligation to check the terms on a peri-
odic basis to learn whether they have been changed by the
other side.[1] Indeed, a party can't unilaterally change the terms

---

[1]Nor would a party know *when* to check the website for possible
changes to the contract terms without being notified that the contract has
been changed and how. Douglas would have had to check the contract
every day for possible changes. Without notice, an examination would be
fairly cumbersome, as Douglas would have had to compare every word of
the posted contract with his existing contract in order to detect whether it
had changed.

of a contract; it must obtain the other party's consent before doing so. *Union Pac. R.R.* v. *Chi., Milwaukee, St. Paul & Pac. R.R.*, 549 F.2d 114, 118 (9th Cir. 1976). This is because a revised contract is merely an offer and does not bind the parties until it is accepted. *Matanuska Valley Farmers Cooperating Ass'n* v. *Monaghan*, 188 F.2d 906, 909 (9th Cir. 1951). And generally "an offeree cannot actually assent to an offer unless he knows of its existence." 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 4:13, at 365 (4th ed. 1990); *see also Trimble* v. *N.Y. Life Ins. Co.*, 255 N.Y.S. 292, 297 (App. Div. 1932) ("An offer may not be accepted until it is made and brought to the attention of the one accepting."). Even if Douglas's continued use of Talk America's service could be considered assent, such assent can only be inferred after he received proper notice of the proposed changes. Douglas claims that no such notice was given.

*Crawford* v. *Talk America, Inc.*, No. 05-CV-0180-DRH, 2005 WL 2465909, at *4 (S.D. Ill. Oct. 6, 2005), and *Bischoff* v. *DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103-06 (C.D. Cal. 2002), on which the district court relied, are not to the contrary. The customers in these cases received notice of the modified contract by mail. The service provider in *Bischoff* mailed the contract to the customer, 180 F. Supp. 2d at 1101, and the service provider in *Crawford* gave notice to the customer that she could see the contract terms online or call the service provider to learn of the terms. 2005 WL 2465909, at *3 n.3. Furthermore, *Crawford* and *Bischoff* involved new customers who necessarily would be on notice that they were required to assent to contract terms as a predicate for using the service. By contrast, the California Court of Appeal has held that a *revised* contract containing an arbitration clause is unenforceable against existing customers, even when they are given notice by mail. *Badie* v. *Bank of Am.*, 67 Cal. App. 4th 779, 801 (Ct. App. 1998).

[3] The district court thus erred in holding that Douglas was bound by the terms of the revised contract when he was not

notified of the changes. The error reflects fundamental misapplications of contract law and goes to the heart of petitioner's claim. It would alone be sufficient to satisfy the third *Bauman* factor, but the district court also committed two additional errors. Even if Douglas were bound by the new terms of the contract (which he is not for the reasons already explained), the new terms probably would not be enforceable in California because they conflict with California's fundamental policy as to unconscionable contracts.[2] In New York, as in Califor-

---

[2]Under the Federal Arbitration Act (FAA), 9 U.S.C. § 2, "[a]rbitration agreements . . . are subject to all defenses to enforcement that apply to contracts generally." *Ingle* v. *Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Thus, "[t]o evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.' " *Id.* (quoting *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995)). Such state-law principles come from the law of a particular state—not federal general common law under the FAA. *See First Options*, 514 U.S. at 944. Here, Douglas has raised the state law defenses of lack of contract formation and unconscionability, so we must determine which state's law applies.

The FAA "does not create any independent federal-question jurisdiction." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). The district court exercised supplemental jurisdiction in this case. When a federal court exercises supplemental jurisdiction, "the federal court applies the choice-of-law rules of the forum state," which in this case is California. *Paracor Fin., Inc.* v. *Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).

Under California's choice-of-law rules, the district court may not enforce the choice-of-law provision pointing to New York law if (1) New York's substantive law is contrary to a fundamental policy entrenched in California's substantive law and (2) California has a "materially greater interest" than New York in determining the issue. *Wash. Mut. Bank, FA* v. *Superior Court*, 24 Cal. 4th 906, 916-17 (2001) (quoting Restatement (Second) of Conflict of Laws § 187(2)). To determine which state has the materially greater interest, we look to the domicile of the parties and the place of the wrong. *See Reich* v. *Purcell*, 67 Cal. 2d 551, 555 (1967). California certainly has an interest in protecting the thousands of citizens in the California subclass of this class action from unconscionable contracts. And this interest is materially greater than New York's interest because Talk America is a Pennsylvania corporation with its principal place of business in Pennsylvania. Therefore, if New York law conflicts with a fundamental policy of California, the choice-of-law provision cannot be enforced and California law would apply.

nia, a contract is unconscionable only if it is both procedurally and substantively unconscionable. *See Armendariz* v. *Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *Gillman* v. *Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). That's where the similarities end. The district court erred in analyzing California law as to both procedural and substantive unconscionability.

**[4]** The district court held that the arbitration clause in the modified contract is not procedurally unconscionable (and therefore enforceable) because Douglas had meaningful alternative choices for telephone service. Under New York law this choice forecloses any procedural unconscionability claim. *See Ranieri* v. *Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003). However, after the district court made its ruling, we noted that California "has rejected the notion that the availability . . . of substitute . . . services *alone* can defeat a claim of procedural unconscionability." *Nagrampa* v. *Mail-Coups, Inc.*, 469 F.3d 1257, 1283 (9th Cir. 2006) (en banc). In California, a contract can be procedurally unconscionable if a service provider has overwhelming bargaining power and presents a "take-it-or-leave-it" contract to a customer—even if the customer has a meaningful choice as to service providers. *Id.* at 1284.

**[5]** Likewise, the district court held that the class action waiver provision is not substantively unconscionable. Such waivers aren't substantively unconscionable under New York law. *See Hayes* v. *County Bank*, 811 N.Y.S.2d 741, 743 (App. Div. 2006); *Tsadilas* v. *Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004); *Ranieri*, 759 N.Y.S.2d at 449. The district court cited *Provencher* v. *Dell, Inc.*, 409 F. Supp. 2d 1196, 1201 (C.D. Cal. 2006), for the proposition that California law was in accord, but the California Court of Appeal in *Cohen* v. *DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1455 n.13 (Ct. App. 2006), expressly disavowed *Provencher*. A class action waiver provision thus may be unconscionable in California. Whether it is depends on the facts and circumstances

developed during the course of litigation. The district court clearly erred in holding that the clauses (assuming that they are part of the contract at all) are consistent with California policy and therefore enforceable as a matter of law.

Because we find that the district court committed clear errors of law, we turn to the remaining four *Bauman* factors.

**[6] 2.** The first and second *Bauman* factors weigh in favor of granting mandamus relief.[3] If Douglas is forced to arbitrate, he "has no other adequate means" of ensuring that he can continue as the class representative. *Bauman*, 557 F.2d at 654. This would "prejudice[ ]" Douglas "in a way not correctable on appeal." *Id.*

If Douglas wins the arbitration and is awarded all the damages he asks for, then his individual claim would be rendered moot.[4] Douglas couldn't avoid mootness by moving to vacate the arbitration award solely because he wanted to continue as the class representative. There are only four permissible grounds for vacating an arbitration award: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) the arbitrators "refus[ed] to postpone the hearing" even when there was sufficient cause to postpone, "refus[ed] to hear evidence pertinent and material to the controversy" or engaged in "other misbehavior"; and (4) "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a). In sum, a party needs to show "affirmative misconduct" or "irrational[ity]" in

---

[3]We generally examine the first and second factors together. *See Bauman*, 557 F.2d at 654 (the second factor "is closely related to the first").

[4]If Douglas were to lose the arbitration or were awarded less than he seeks, his claim would not be moot, as he would be able to challenge the district court's order compelling arbitration as part of his appeal of the arbitration award. *See Sanford* v. *MemberWorks, Inc.*, 483 F.3d 956, 960 (9th Cir. 2007) (reversing a district court's order compelling arbitration when the plaintiff received an arbitration award on a restitution claim but "[t]he arbitrator found for [defendant] on [plaintiff's] other claims").

the arbitration to vacate an arbitration award. *Kyocera Corp.* v. *Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc). Losing the opportunity to continue as a class representative doesn't come close to meeting this standard.

**[7]** If Douglas's individual claim is rendered moot because it is fully satisfied as a result of the arbitration, he would lose his status as class representative because he would no longer have a concrete stake in the controversy. It is also doubtful that he could appeal the district court's order confirming an award that fully satisfied his individual claim, and he would thus have no opportunity to challenge the district court's order compelling the arbitration in the first place. It is thus entirely possible that the district court's clear error in compelling arbitration would be insulated from appellate review. *Bauman*, 557 F.2d at 654.

**[8] 3.** The fifth *Bauman* factor also favors mandamus relief. The district court's order enforcing new contractual terms when a customer is only given notice of the terms by having the contract posted on the internet "raises new and important problems" and addresses "issues of law of first impression." *Bauman*, 557 F.2d at 655. This is the first time any federal court of appeals has considered whether to enforce a modified contract with a customer where the customer claims that the only notice of the changed terms consisted of posting the revised contract on the provider's website. This issue is also of some significance, as it potentially affects the relationship of numerous service providers with millions of customers, and thus deserves immediate resolution.

\* \* \*

**[9]** Because four of the five *Bauman* factors favor mandamus relief, and only one factor (the fourth) militates against it, we conclude that the balance of factors favors issuing the

writ. The district court's order compelling arbitration is vacated.

**PETITION GRANTED.**