IN THE SUPREME COURT OF TEXAS















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 04-1049

════════════

 

In re Poly-America, L.P., Ind.
and D/B/A Pol-Tex International, 

and Poly-America GP, L.L.C., Relators

 

 

════════════════════════════════════════════════════

On Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

 

Argued January 25,
2006

 

 

Justice Brister,
dissenting.

 

            The hard thing about granting
mandamus relief is knowing when to stop. This Court has
tried over the years to set mandamus boundaries through various tests, all of
which soon generated exceptions, and most of which were met with objections
that the “established” boundaries of mandamus were being ignored.

            Only two years ago, we held in In re Palacios that mandamus review was
available for “orders that deny arbitration, but not orders that compel
it.”[1] We noted that
this was a reversal of previous practice,[2] but was
necessitated by the Supreme Court’s 2000 opinion in Green Tree Financial
Corp. v. Randolph, which said that orders compelling arbitration “would not
be appealable” unless they included final dismissal
of the case.[3] Today the
Court comes full circle, saying once again that mandamus review of orders
compelling arbitration is “proper,” though courts should be “hesitant” about
it.[4]
Apparently, so long as one expresses qualms, Palacios is a dead letter.

            Of course, firm rules governing
mandamus are made to be broken, as issuance of the writ is primarily a matter
of judgment and prudence.[5] As the United
States Supreme Court said in 2004, mandamus is appropriate if a party shows a
clear right, no alternative remedy, and that mandamus is
“appropriate under the circumstances.”[6] This test
(especially the last prong) defies precise application, but years of judicial
effort have failed to produce a better one. As a result, reasonable judges will
sometimes disagree whether mandamus is “prudent” or “appropriate under the
circumstances,” and sometimes decide differently in one case than the next. But
departing from Palacios is neither prudent nor appropriate for at least
five reasons. 

            First, Congress amended the Federal
Arbitration Act in 1988 so that it “permits immediate appeal of orders hostile
to arbitration, . . . but bars appeal of interlocutory
orders favorable to arbitration.”[7] Texas law is to the same
effect.[8]
As the trial court’s order here was favorable to arbitration, we should defer
to the cost-benefit analysis already conducted by the federal and state
legislatures.[9] We cannot
simply substitute mandamus when interlocutory appeal is prohibited without
running into serious Supremacy Clause problems;[10]
“[f]requent pre-arbitration review would inevitably
frustrate Congress’s intent to move the parties to an arbitrable
dispute out of court and into arbitration as quickly and easily as possible.”[11]

            Second, the trial court ordered
these parties to arbitration five years ago. Had mandamus proceedings not
intervened, this dispute would have long since been concluded. Surely the time
and expense incurred arbitrating this case would have been less than that
incurred in mandamus review. And now that mandamus review is concluded, the
parties must go to arbitration anyway. Given our state’s strong public policy
favoring freedom of contract,[12]
claims that a contract is unconscionable are asserted far more often than they
are sustained. After today’s decision, it is hard to see how any arbitration
cannot be stopped in its tracks by alleging unconscionability.

            Third, today’s opinion is purely
advisory; if an arbitrator ignores it, there is little we can do. Both federal
and state law require courts to enforce an
arbitrator’s decision, no matter what it is, with very few exceptions.[13]
The allowable exceptions concern extrinsic or procedural matters like
corruption, fraud, or refusing to hear evidence;[14]
they do not include (as the Supreme Court just held) disregarding the law, even
if a legal error is “manifest.”[15]
What is the benefit of mandamus review if the resulting order can be ignored?

            Fourth, even if most arbitrators
would comply with an appellate court’s mandamus rulings, issuing them creates a
hybrid procedure unknown to the arbitration acts. As already noted, those
statutes commit matters concerning the law and the merits to the arbitrators
and foreclose judicial review of the details of the result. This also appears
to violate the parties’ agreement in this case, which authorized the arbitrator
to address unconscionability:

 

Should any term of
this Agreement be declared illegal, unenforceable, or unconscionable, the
remaining terms of the Agreement shall remain in full force and effect. To the extent possible, both Employee and Company
desire that the Arbitrator modify the term(s) declared to be illegal,
unenforceable, or unconscionable in such a way as to retain the intended
meaning of the term(s) as closely as possible.

 

Telling the
arbitrators in advance what legal rulings they should make (as the Court does
today) is an improper way to circumvent these restrictions.

            Fifth and finally, the Court decides
an important question in the abstract that the arbitration may render moot. The
Court concedes that unconscionability of the
fee-splitting and discovery-limiting clauses should be deferred to the
arbitrator. But unconscionability of the
remedy-stripping clause is just as fact-based, and
just as speculative until all the facts are arbitrated. The fairness of such
clauses is not as one-sided as the Court suggests; many employees might
actually prefer cash for lost wages (and no appellate delays) rather
than reinstatement or a long shot at punitive damages. As the Court notes,
several courts have held that such “limitations of remedies are permissible.”[16]
Twice in 2003 the Supreme Court declined to hold that a remedy-stripping
arbitration clause violates the FAA — each time deferring the question until
after arbitrators had addressed it.[17]
We should do the same here. 

            We have never held (as the Court
holds repeatedly today) that an arbitration agreement is invalid unless an
employee can “effectively vindicate his statutory rights.”[18]
We did not say so in In re Halliburton Co. (as
the Court’s citations aver), where that phrase appears only in a parenthetical
describing an opinion by an intermediate appellate court in Michigan, an opinion we neither approved nor
adopted.[19]
Nor does the Court’s judgment comply with this new standard. Despite the remedy
limits imposed here, an arbitrator could still award Johnny Luna 50 years of
future lost wages, which would certainly seem to “effectively vindicate his
statutory rights.” Even more than the fee-splitting or discovery-limiting
provisions, it is simply too early to tell whether the remedy-stripping
provisions will be unfair to Luna at all.

            Such an important and controversial
question should not be decided in such an offhanded and abstract way. We should
instead wait to see whether the arbitration award makes such a decision
necessary; “if it is not necessary to decide more, it is necessary not to decide
more.”[20]

            The Court overlooks all these
problems on the ground that mandamus “has been broadly applied” by federal
courts to review orders compelling arbitration.[21]
But the string citations that follow do not support that claim. Of the five
cases cited, three predated Green Tree,[22]
and a fourth did not involve a trial court order favorable to arbitration.[23]
The single case granting mandamus relief from an order favorable to arbitration
was by the Ninth Circuit, the court widely recognized as the “most hostile,”[24]
“far to the left of center,”[25]
and “renegade” court in the country in employment arbitration cases.[26]
Even so, mandamus was granted in that case only because arbitrating the single
class representative’s case could moot the class action he had brought, wiping
it out without appellate review.[27]
In short, there is no “broad” consensus for doing precisely the opposite of
what Congress and the Texas Legislature intended. 

            It is certainly true that leaving
matters like unconscionability to arbitrators will
mean development of the law is “substantially hindered,”[28]
but the same could be said of arbitration in all cases. It is hard to
see the allure of a system in which decision-makers can ignore the law, unless
of course one is planning to ignore the law oneself. Based on its popularity,
few arbitrators apparently go that far. But even carefully selected judges and
jurors make mistakes, and carefully selected arbitrators are surely no less
fallible. Nevertheless, these are policy matters that only Congress can address
or amend; we cannot disregard the express legislative limits on interlocutory
review merely by calling it mandamus when we think the questions are important
and the issues well-briefed.

            While appeal from arbitration awards
is very limited, that appeal is an adequate remedy unless the benefits of
mandamus outweigh the costs.[29]
Considering the costs expended so far, I doubt Johnny Luna would consider them
outweighed by getting the right to seek reinstatement in arbitration (which
employees rarely request) and punitive damages (which they rarely get). Accordingly,
I agree with the Court that the court of appeals erred in reviewing and
reversing the trial court’s order compelling arbitration. But I disagree that
we have any place reviewing those matters either. To that extent, I
respectfully dissent.

 

                                    __________________________________

                                    Scott Brister

                                    Justice

 

OPINION
DELIVERED: August 29, 2008

 














[1] 221
S.W.3d 564, 566 (Tex.
2006) (emphasis added).





[2] Id. at 565 (noting abrogation of Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994)). 





[3]
531 U.S.
79, 87 n.2 (2000).





[4]
___ S.W.3d ___, ___.





[5] See,
e.g., CSR Ltd. v. Link, 925 S.W.2d 591, 597 (Tex. 1996) (“Because of
the size and complexity of the asbestos litigation, the most prudent use
of judicial resources in this case is to permit a preliminary resolution of the
fundamental issue of personal jurisdiction by writ of mandamus.”) (emphasis
added); In re Dean, 527 F.3d 391, 396 (5th Cir. 2008) (“The decision
whether to grant mandamus is largely prudential.”); In re Atlantic Pipe Corp.,
304 F.3d 135, 140 (1st Cir. 2002) (concluding mandamus was “prudent under the
circumstances”); In re Chimenti, 79 F.3d 534,
539 (6th Cir. 1996) (noting availability of interlocutory appeal was merely one
of several factors affecting court’s “prudential considerations” regarding
issuance of mandamus).





[6] Cheney
v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 380–81 (2004)
(holding mandamus should issue when there is (1) no other adequate remedy, (2)
a “clear and indisputable” right, and (3) “the writ is appropriate under the
circumstances”).

 





[7] Green
Tree Fin. Corp.-Ala. v. Randolph,
531 U.S.
79, 86 (2000) (construing 9 U.S.C. § 16) (emphasis added).





[8] See
Tex. Civ. Prac. &
Rem. Code § 171.098; In re Palacios,
221 S.W.3d 564, 566 (Tex.
2006). 





[9] In
re McAllen Med. Ctr., Inc., ___ S.W.3d ___,
___ (Tex. 2008) (“Although mandamus review is
generally a matter within our discretion, our place in a government of
separated powers requires us to consider also the priorities of the other
branches of Texas
government.”).





[10]
See U.S. Const. art. VI, cl.
2 (“[T]he Laws of the United
 States . . . shall be the supreme Law of the
Land; and the Judges in every State shall be bound thereby, any Thing in the
Constitution or Laws of any State to the Contrary notwithstanding.”).





[11]
Perry Homes v. Cull, ___ S.W.3d ___, ___ (Tex. 2008) (quoting Preston
v. Ferrer, ___ U.S. ___, ___ (2008) and Moses
H. Cone Mem’l Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 22 (1983)) (internal quotations omitted).





[12]
Fairfield Ins. Co. v. Stephens Martin Paving, LP, 246 S.W.3d 653, 664 (Tex. 2008); Fortis
Benefits v. Cantu, 234 S.W.3d 642, 649 (Tex.
2007); Lawrence v. CDB Servs.,
Inc., 44 S.W.3d 544, 553 (Tex.
2001).





[13]
See 9 U.S.C. §§ 9–11; Tex. Civ.
Prac. & Rem. Code §§
171.087–171.088, 171.091.





[14]
Id.





[15]
Hall St. Assocs., L.L.C. v. Mattel, Inc., ___ U.S. ___, ___, 128 S.Ct. 1396, 1404 (2008).





[16]
___ S.W.3d at ___.





[17]
See PacifiCare Health Sys., Inc. v. Book, 538 U.S.
401, 406–07 (2003) (holding that “since we do not know how the arbitrator will
construe the remedial limitations” barring treble damages, “the proper course
is to compel arbitration”); Green Tree Fin. Corp. v. Bazzle,
539 U.S.
444, 454 (2003) (remanding for arbitrator to determine whether contracts
prohibited class arbitration). 





[18]
___ S.W.3d at ___, ___, ___, & ___.





[19]
80 S.W.3d 566, 572 (citing Rembert v.
Ryan’s Family Steak Houses, Inc., 596 N.W.2d 208, 226 (Mich. Ct. App.
1999)). 





[20]
PDK Labs. Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004)
(Roberts, J., concurring).





[21]
___ S.W.3d at ___.





[22]
Geourgiou v. Mobil Exploration & Prod. Servs., Inc. US, 190 F.3d 538 (5th Cir. 1999); Cofab Inc. v. Phil. Joint Bd., Amalgamated Clothing &
Textile Workers Union, 141 F.3d 105 (3d Cir. 1998); McDermott Intern.,
Inc. v. Underwriters at Lloyds Subscribing to Memorandum of Ins. No. 104207,
981 F.2d 744 (5th Cir. 1993). 





[23]
Manion v. Nagin,
255 F.3d 535, 540 (8th Cir. 2001) (involving injunction to obtain salary
payments pending arbitration); see also Cofab,
141 F.3d at 110 (involving temporary stay of motion to enforce arbitration
award pending NLRB review of related matter).





[24]
See Adam Borstein, Arbitrary Enforcement:
When Arbitration Agreements Contain Unlawful Provisions, 39 Loy. L.A. L. Rev. 1259, 1275 (2006)
(“This combination of finding unconscionability and
favoring public policy over enforcement of the FAA has made the Ninth Circuit
more hostile towards unlawful arbitration provisions than any other federal
circuit.”); Michael G. McGuinness & Adam J. Karr,
California’s “Unique” Approach to Arbitration: Why This Road Less Traveled Will
Make All the Difference on the Issue of Preemption Under the Federal
Arbitration Act, 2005 J. Disp. Resol.
61, 91-92 (2005)(“[T]he conclusion that California courts—and
the Ninth Circuit—are imposing their own biases against arbitration is
inescapable.”); Steven M. Warshawsky, Gilmer, the
Contractual Exhaustion Doctrine, and Federal Statutory Employment Discrimination
Claims, 19 Lab. Law. 285, 303 n.180 (2004) (“The
Ninth Circuit continues to be hostile to mandatory arbitration agreements.”);
Dennis R. Nolan, Employment Arbitration After Circuit City, 41 Brandeis L.J. 853, 890 (2003) (“[D]espite Congress’s broad endorsement of arbitration in the
FAA and the Supreme Court’s repeated confirmation of that policy, many judges
(not all of them on the Ninth Circuit) remain deeply skeptical if not openly
hostile.”); Hai Jiang,
Do We Allow Contract Law to Administer Civil Rights Remedies? Casenote on
Haskins v. Prudential Insurance Co., 2003 L. Rev. Mich. St. U. Det. C.L. 251, 260 (2003) (“The
Ninth Circuit is the most hostile to arbitration of employment discrimination
claims among the circuit courts . . . .”).





[25]
See Earl Greene III, Note, Armendariz
v. Foundation Health Psychcare Services, Inc.: The California Supreme Court
Searches For a Middle Ground, 1 J.
Am. Arb.
105, 108-09 (2001) (“On a mandatory arbitration agreement enforcement
continuum, the Ninth Circuit would be sitting far to the left of center as it
seems to be more concerned with protecting the statutory rights of employees
than toeing the line with the Supreme Court.”)





[26]
See Jennifer LaFond, Notes, The Private
Enforcement of Public Laws in Armendariz v.
Foundation Health Psychcare Servs.,
29 Pepp. L. Rev.
401, 414 n.127 (2002) (“The Ninth Circuit is the renegade circuit with respect
to . . . [whether] employees can be compelled to arbitrate statutory claims.”).





[27]
Douglas v. U.S. Dist. Court
, 495 F.3d 1062,
1068-69 (9th Cir. 2007).





[28]
___ S.W.3d at ___.





[29]
In re BP Products N. Am., Inc., 244 S.W.3d 840, 845 (Tex.
2008); In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004).