**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLEN LEE, on behalf of himself and all others similarly situated, | No.   19-15673 |
| Plaintiff-Appellant, | D.C. No. 3:18-cv-05987-VC |
| v. | MEMORANDUM[*] |
| TICKETMASTER L.L.C., a Virginia corporation; LIVE NATION ENTERTAINMENT, INC., a Delaware corporation, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Submitted June 10, 2020[**]
San Francisco, California

Before:  THOMAS, Chief Judge, and SCHROEDER and BUMATAY, Circuit Judges.

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Plaintiff Allen Lee appeals the district court's decision granting Defendant Ticketmaster's motion to compel arbitration and dismissing Lee's case. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts of this case, we need not recount them here.

"We review a district judge's order to compel arbitration *de novo*." *Casa del Caffe Vergnano S.P.A., v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016); *see also Serafin v. Balco Props. Ltd., LLC*, 185 Cal. Rptr. 3d 151, 173 (Ct. App. 2015) ("[When] there are no facts in dispute, the existence of a contract is a question we decide de novo.").

To determine "whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[1] "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Id.* (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)). "One such principle is the requirement that '[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Id.* (quoting *Specht v.*

---

[1] The parties do not dispute that California law applies.

2

*Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)). Under California law, "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Meyer v. Benko*, 127 Cal. Rptr. 846 (1976)).

When determining whether there is a binding agreement with respect to a website's terms of use, courts often analyze Internet contracts in two groups: "clickwrap" agreements, "in which website users are required to click on an 'I agree' box after being presented with a list of the terms and conditions of use," and "browsewrap" agreements, "where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175–76. Although it is easier to find mutual assent in cases dealing with clickwrap agreements, the "validity of [a] browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* at 1176 (quoting *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). We are "more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with the use of the website." *Id.*

3

Likewise, "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements." *Id.* at 1177.

Ticketmaster's Terms of Use do not constitute a browsewrap agreement because they are not merely posted on Ticketmaster's website at the bottom of the screen. Although the Terms do not constitute a true pure-form clickwrap agreement as California courts have construed it (because Ticketmaster does not require users to click a separate box indicating that they agree to its Terms), Ticketmaster's website provided sufficient notice for constructive assent, and therefore, there was a binding arbitration agreement between Lee and Ticketmaster.

Lee validly assented to Ticketmaster's Terms of Use, including the arbitration provision, each time he clicked the "Sign In" button when signing into his Ticketmaster account, where three lines below the button, the website displayed the phrase, "By continuing past this page, you agree to our Terms of Use," as well as each time he clicked the "Place Order" button when placing an order for tickets, where directly above the button, the website displayed the phrase, "By clicking 'Place Order,' you agree to our Terms of Use," where in both contexts, "Terms of Use" was displayed in blue font and contained a hyperlink to Ticketmaster's

Terms. Thus, Ticketmaster's website required users to "affirmatively acknowledge the agreement before proceeding," *id.* at 1176, and "the website contain[ed] an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," *id.* at 1177. Lee "cannot avoid the terms of [the] contract on the ground that he . . . failed to read it before signing," *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (Ct. App. 2001), especially when he "had a legitimate *opportunity* to review it," *Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015), *rev'd in part on other grounds*, 848 F.3d 1201 (9th Cir. 2016). The fact that Lee indicated his assent to Ticketmaster's Terms of Use roughly twenty times during the relevant period only reinforces that he had many such opportunities.

Lee cites *Douglas* for the proposition that "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Douglas v. U.S. Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007). But *Douglas* is inapposite because it considered factual circumstances in which the plaintiff assented only once to the terms of a single contract which was later modified by the opposing party without providing the plaintiff sufficient notice. *Id.* By contrast, here, Lee

5

affirmatively indicated his assent each time Ticketmaster presented him with an agreement.[2]

**AFFIRMED.**

---

[2] The other cases cited by Lee are distinguishable on the same ground and, in any case, are not binding on this panel. *See Rodman v. Safeway, Inc.*, 694 F. App'x 612 (9th Cir. 2017); *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2015 WL 604985, at *1, *11 (N.D. Cal. Feb. 12, 2015) (noting that "Class Members were presented with a clickwrap agreement at the time of their registration, [but] *they were never presented with a subsequent clickwrap agreement asking them to consent to the revised* [*terms of service*].") (emphasis added); *Daniel v. eBay, Inc.*, 319 F. Supp. 3d 505, 512 (D.D.C. July 26, 2018) (considering factual circumstances in which plaintiff assented to eBay's User Agreement only once, thirteen years before eBay added an arbitration provision).