IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-1049
════════════
 
In re Poly-America, L.P., 
Ind. and d/b/a Pol-Tex International, 
and Poly-America GP, L.L.C., 
Relators
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued January 25, 
2006
 
 
            
Justice O’Neill delivered the opinion of the Court, in 
which Chief Justice Jefferson, Justice Hecht, Justice 
Wainwright, Justice Medina, Justice Green, and Justice Johnson joined.
 
            
Justice Brister 
filed a dissenting opinion.
 
            
Justice Willett did not participate in the 
decision.
 
 
            
In this retaliatory-discharge case, the employee’s employment contract 
contains an arbitration agreement that requires the employee to split 
arbitration costs up to a capped amount, limits discovery, eliminates punitive 
damages and reinstatement remedies available under the Workers’ Compensation 
Act, and imposes other conditions on the arbitration process. We must decide 
whether any or all of these provisions are unconscionable and, if they are, 
whether the contract’s severability clause preserves the arbitration right. We 
hold that the trial court did not abuse its discretion in allowing the 
arbitrator to assess the unconscionability of the 
agreement’s fee-splitting and discovery-limitation provisions as applied in the 
course of arbitration. We further hold that the arbitration agreement’s 
provisions precluding remedies under the Workers’ Compensation Act are 
substantively unconscionable and void under Texas law. However, those provisions are not 
integral to the parties’ overall intended purpose to arbitrate their disputes 
and, pursuant to the agreement’s severability clause, are severable from the 
remainder of the arbitration agreement, which we conclude is otherwise 
enforceable. Accordingly, we conditionally grant the petition for mandamus. 
I. Facts
            
Johnny Luna began his employment with Pol-Tex International, d/b/a Poly-America, L.P., in October 
1998. Upon his hiring, Luna signed an agreement to submit “all claims or 
disputes” to arbitration. Approximately four years later, Luna signed an amended 
agreement to arbitrate that contained substantially the same provisions. Both 
the 1998 and 2002 agreements provide that they are governed by the Federal 
Arbitration Act (FAA). 9 U.S.C. §§ 1–14. Additionally, both agreements contain a 
series of requirements for the arbitration between the parties. All claims must 
be asserted within a maximum of one year from the occurrence of the event from 
which the claim arises. Fees associated with arbitration — including but not 
limited to mediation fees, the arbitrators’ fees, court reporter fees, and fees 
to secure a place for a hearing — are to be split between the parties, with the 
employee’s share capped at “the gross compensation earned by the Employee in 
Employee’s highest earning month in the twelve months prior to the time the 
arbitrator issues his award.” Each side is permitted limited forms of discovery: 
twenty-five interrogatories (including sub-parts), twenty-five requests for 
production or inspection of documents or tangible things, and one oral 
deposition of no more than six hours. Parties may not use written depositions or 
requests for admission; the agreement prohibits discovery of either party’s 
financial information except for the employee’s earnings if the employee seeks 
lost wages, back pay, and/or front pay; and all aspects of the arbitration are 
deemed confidential. Finally, the arbitrator is stripped of authority to award 
punitive, exemplary, or liquidated damages, or to order reinstatement of 
employment.
            
In December 2002, Luna suffered a work-related neck injury when he 
accidentally hit his head on a pipe. Poly-America’s company doctor examined Luna 
and diagnosed him with an acute cervical spine flexion injury. Luna subsequently 
filed a workers’ compensation claim and began receiving physical therapy. 
Approximately two weeks later, Luna returned to work on a release for light 
duty; however, Luna continued to suffer pain and utilized previously scheduled 
vacation time to recover from his injury. After being warned by the company 
doctor that he needed to return to work and get off of workers’ compensation if 
he wanted to keep his job, Luna returned to work without restrictions on January 
10, 2003. Upon his return, Luna noticed that another person was already being 
trained for his position, and he claims that his supervisor began to harass him. 
One month later, Luna told his supervisor that his neck continued to bother him 
and that he needed to return to the company doctor; the next day that Luna was 
scheduled to work, he was fired.
            
Luna filed this suit asserting claims for unlawful retaliatory discharge 
under section 451.001 of the Labor Code (“the Workers’ Compensation Act”). Tex. Lab. Code § 451.001–.003. Claiming 
that Poly-America acted with malice, ill will, spite, or specific intent to 
cause injury, Luna sought both reinstatement and the imposition of punitive 
damages. He additionally sought a declaratory judgment that the arbitration 
agreement was unenforceable because, among other reasons, its provisions 
violated public policy and were unconscionable. Luna submitted two affidavits — 
his own, and that of an expert witness — in support of his claims. Poly-America 
responded with a motion to compel arbitration which, after a hearing, the trial 
court granted.
            
Luna sought a writ of mandamus in the court of appeals, reasserting his 
argument that provisions of the arbitration agreement were substantively 
unconscionable. The court of appeals held that, in light of the fee-splitting 
provisions and limitations on remedies, the arbitration agreement as a whole was 
substantively unconscionable. 175 S.W.3d 315, 318. Poly-America sought review in 
this Court. We hold that the arbitration agreement’s provision that eliminates 
available remedies under the Workers’ Compensation Act is unenforceable, but we 
find that provision severable from the arbitration agreement as a whole and 
conditionally grant Poly-America’s writ of mandamus.
II. Standard of Review
            
Mandamus is the proper means by which to seek review of an order 
compelling arbitration under the FAA. In re Am. Homestar of Lancaster, Inc., 50 S.W.3d 480, 483 
(Tex. 2001). 
In In re Palacios, we recognized that it 
is “important for federal and state law to be as consistent as possible” in 
enforcement and review of provisions under the FAA. 221 S.W.3d 564, 565 
(Tex. 2006) (per curiam) (quoting In re Kellogg Brown & Root, 
Inc., 166 S.W.3d 732, 739 (Tex. 2005)). Federal courts may not review 
orders compelling arbitration and staying litigation (“compel-and-stay orders”) 
by interlocutory appeal. See 9 U.S.C. § 16(b)(1) (“[A]n appeal may not be 
taken from an interlocutory order . . . granting a stay of any action under 
Section 3 of this title.”). Accordingly, as we noted in Palacios, it 
would be inappropriate to exercise our own mandamus power in a manner 
inconsistent with the federal courts’ practice. See Palacios, 221 S.W.3d 
at 565. Although mandamus review is generally available in federal courts to 
review non-appealable interlocutory rulings, mandamus 
is granted only in exceptional cases. See generally Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 288–90 
& n.13 (1988) (holding that, where a particular order is not appealable, mandamus is available and “will be appropriate 
in exceptional cases”). As we acknowledged in Palacios, federal courts 
have applied this template to orders that cannot be appealed under the FAA, 
although they almost never grant mandamus relief. 221 S.W.3d at 565-66 (“Even 
after Green Tree [Financial Corp.–Alabama v. Randolph, 531 U.S. 79 
(2000)], the Fifth Circuit has held that federal mandamus review of an order 
staying a case for arbitration may still be available if a party can meet a 
‘particularly heavy’ mandamus burden to show ‘clearly and indisputably that the 
district court did not have the discretion to stay the proceedings pending 
arbitration.’”) (quoting Apache Bohai Corp. v. 
Texaco China, B.V., 330 F.3d 307, 310–11 
(5th Cir. 2003)). This general rule has been broadly applied to unappealable ancillary interlocutory orders in proceedings 
under the FAA, see, e.g., Georgiou v. Mobil Exploration & Prod. 
Servs., Inc. U.S., 1999 WL 642871 at *3 (5th Cir. 
July 27, 1999) (dismissing appeal of order staying litigation in favor of 
arbitration proceeding in foreign forum, and denying mandamus because plaintiffs 
failed to carry the “particularly heavy burden” to warrant mandamus relief from 
such an order); Cofab Inc. v. Phila. Joint Bd., Amalgamated Clothing & Textile Workers 
Union, AFL–CIO–CLC, 141 F.3d 105, 110 (3d Cir. 1998); and appears to also 
apply to compel-and-stay orders under section 16(b)(1), see Douglas v. 
U.S. Dist. Court, 495 F.3d 1062, 1065 (9th Cir. 2007) (granting mandamus 
relief from compel-and-stay order); Manion 
v. Nagin, 255 F.3d 535, 538–40 & n.4 (8th Cir. 
2001) (dismissing appeal of various interlocutory orders, including order 
compelling arbitration, and denying mandamus because Manion had not made “any showing that he [was] entitled to 
such extraordinary relief”); McDermott Int’l, Inc. v. Underwriters at Lloyds 
Subscribing to Memorandum of Ins. No. 104207, 981 F.2d 744, 748 (5th Cir. 
1993) (“This court has recognized that [mandamus review of an order compelling 
arbitration] may be available [but] McDermott has failed to satisfy [the] 
demanding standard.”).[1]
            
Although federal precedent in this area is not uniformly clear, it 
appears a federal court would be permitted — albeit not compelled — to address 
the merits of the mandamus arguments in this case. If such review were 
categorically unavailable and unconscionability 
determinations the sole realm of arbitrators, as the dissenting Justice 
proposes, development of the law as to this threshold issue would be 
substantially hindered if not precluded altogether. Nevertheless, federal 
precedent counsels against granting relief unless the stringent requirements for 
mandamus are met. See Gulfstream, 485 
U.S. at 289. Federal courts grant 
mandamus only upon demonstration of a “clear and indisputable” right to issuance 
of the writ: “First, the party seeking the issuance of the writ must have no 
other adequate means to attain the relief he desires. . . . Second, the 
petitioner must satisfy the burden of showing that his right to issuance of the 
writ is clear and indisputable. Third . . . the issuing court, in the exercise 
of its discretion, must be satisfied that the writ is appropriate under the 
circumstances.” Cheney v. U.S. 
Dist. Court
, 542 U.S. 367, 380–81 
(2004). Our own mandamus standard is similar, requiring a demonstration that the 
trial court clearly abused its discretion by failing to correctly analyze or 
apply the law and a determination that the benefits of mandamus outweigh the 
detriments such that an appellate remedy is inadequate. See In re 
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135–36 (Tex. 2004). Because 
arbitration is intended to provide a lower-cost, expedited means to resolve 
disputes, mandamus proceedings will often, if not always, deprive the parties of 
an arbitration agreement’s intended benefits when a compel-and-stay order is at 
issue; accordingly, courts should be hesitant to intervene. With these standards 
in mind, we turn to the compel-and-stay order in this case.
III. Unconscionability and the Federal 
Arbitration Act
            
Poly-America argues that the FAA’s “strong presumption” favoring 
arbitration applies in this case, and furthermore that the FAA preempts all 
state public-policy grounds for finding the agreement to arbitrate 
unenforceable. See In re R&R Personnel Specialists of Tyler, Inc., 
146 S.W.3d 699, 705 (Tex. 2004) (holding that the FAA preempts “any public 
policy underlying the Texas workers’ compensation statutes that is contrary to 
the enforceability of arbitration agreements”). Because neither this presumption 
nor federal preemption applies in a state court’s assessment of whether parties 
have entered into a valid and enforceable agreement to arbitrate under state 
contract law, we disagree.
            
Section 2 of the FAA provides that arbitration agreements “shall be 
valid, irrevocable, and enforceable, save upon such grounds as exist at law 
or in equity for the revocation of any contract.” 9 U.S.C. § 2 (emphasis 
added). Thus, an agreement to arbitrate is valid under the FAA if it meets the 
requirements of the general contract law of the applicable state. In re AdvancePCS Health L.P., 172 S.W.3d 603, 606 (Tex. 2005) (citing First Options of Chicago, Inc. v. 
Kaplan, 514 U.S. 938, 944 (1995)). In determining 
the validity of an agreement to arbitrate under the FAA, courts must first apply 
state law governing contract formation. See 9 U.S.C. § 2; First 
Options, 514 U.S. at 944. The United States 
Supreme Court has repeatedly emphasized that “state law, whether of legislative 
or judicial origin, is applicable [to the determination of the validity of an 
agreement to arbitrate] if that law arose to govern issues concerning the 
validity, revocability, and enforceability of contracts generally.” Perry v. 
Thomas, 482 U.S. 483, 493 n.9 (1987). Thus, 
courts “may not . . . invalidate arbitration agreements under state laws 
applicable only to arbitration provisions.” Doctor’s Assocs., Inc. v. 
Casarotto, 517 U.S. 681, 687 (1996); see also 
Perry, 482 U.S. at 493 n.9 (“A state-law principle that takes its meaning 
precisely from the fact that a contract to arbitrate is at issue does not 
comport with [section 2].”).
            
However, the purpose and language of the FAA require only that agreements 
to arbitrate be placed “upon the same footing as other contracts.” 
Doctor’s Assocs., 517 U.S. at 687 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 
511 (1974)) (emphasis added); see also H.R. Rep. No. 68-96, at 1 (1924) 
(noting that by enacting section 2, Congress sought to place agreements to 
arbitrate “upon the same footing as other contracts, where [they] belong[]”). 
Perry makes clear that state courts may not fashion special rules 
regarding the enforceability of arbitration contracts per se. See 
Perry, 482 U.S. at 492 n.9. Furthermore, once an enforceable contract to 
arbitrate is found, there is a strong federal presumption in favor of 
arbitration such that myriad doubts — as to waiver, scope, and other issues not 
relating to enforceability — must be resolved in favor of arbitration. See, 
e.g., In re FirstMerit Bank, 52 S.W.3d 749, 
752 (Tex. 2001); Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 898–99 
(Tex. 1995). However, a state court must initially determine — through the 
neutral application of its own contract law — whether an enforceable agreement 
exists in the first instance, and whether “generally applicable contract 
defenses . . . may be applied to invalidate arbitration agreements without 
contravening” the policies of the FAA. Doctor’s Assocs., 517 U.S. at 687. 
Thus, in this case, if a contract limiting damages or restricting other remedies 
under the Workers’ Compensation Act is generally unenforceable under 
Texas law, an arbitration contract with these same limitations will also be 
unenforceable.
            
Nevertheless, under Texas law, as with any other contract, agreements to 
arbitrate are valid unless grounds exist at law or in equity for revocation of 
the agreement. The burden of proving such a ground — such as fraud, unconscionability or voidness 
under public policy — falls on the party opposing the contract. See FirstMerit Bank, 52 S.W.3d at 756. Thus, while we reject 
Poly-America’s assertions that we must apply a presumption favoring arbitration 
in assessing whether the parties entered into an enforceable agreement under 
Texas law and that the FAA preempts Texas public policies that may make certain 
contractual provisions generally unenforceable, Luna nevertheless bears the 
burden to establish that the challenged provisions are unenforceable.
IV. Arbitration and Unconscionability 
Under Texas Law
A. General Standard
            
Agreements to arbitrate disputes between employers and employees are 
generally enforceable under Texas law; there is nothing per se 
unconscionable about an agreement to arbitrate employment disputes and, in 
fact, Texas law has historically favored agreements to resolve such disputes by 
arbitration. See Advance PCS, 172 S.W.3d at 608; EZ Pawn Corp. v. 
Mancias, 934 S.W.2d 87, 90 (Tex. 1996); Cantella & Co. v. Goodwin, 924 S.W.2d 943, 
944 (Tex. 1996).
            
Unconscionable contracts, however — whether relating to arbitration or 
not — are unenforceable under Texas law. A contract is unenforceable if, “given 
the parties’ general commercial background and the commercial needs of the 
particular trade or case, the clause involved is so one-sided that it is 
unconscionable under the circumstances existing when the parties made the 
contract.” FirstMerit Bank, 52 S.W.3d at 
757; see also In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002) 
(“[S]ubstantive unconscionability . . . refers to the fairness of the 
arbitration provision itself.”). Unconscionability is 
to be determined in light of a variety of factors, which aim to prevent 
oppression and unfair surprise; in general, a contract will be found 
unconscionable if it is grossly one-sided. See Dan B. Dobbs, 2 Law of Remedies 703, 
706 (2d ed. 1993); see also Restatement (Second) of Contracts § 
208, cmt. a (1979) (“The determination that a contract 
or term is or is not unconscionable is made in the light of its setting, 
purpose, and effect. Relevant factors include weaknesses in the contracting 
process like those involved in more specific rules as to contractual capacity, 
fraud, and other invalidating causes; the policy also overlaps with rules which 
render particular bargains or terms unenforceable on grounds of public 
policy.”). Although not subject to precise doctrinal definition, see Sw. Bell Tel. Co. v. DeLanney, 
809 S.W.2d 493, 498 (Tex. 1991) (Gonzalez, J., concurring), unconscionability — as delineated by the above principles — 
has been recognized and applied by this Court for well over a century. See, 
e.g., Flanagan v. Pearson, 61 Tex. 302, 307 (1884); Fowler v. 
Stoneum, 11 Tex. 478, 493 (1854); Hemming v. 
Zimmerschitte, 4 Tex. 159, 166 (1849); Luckett v. Townsend, 3 Tex. 119, 131 
(1848).
            
Whether a contract is contrary to public policy or unconscionable at the 
time it is formed is a question of law. Hoover Slovacek LLP v. Walton, 206 S.W.3d 557, 562 (Tex. 2006). 
Because a trial court has no discretion to determine what the law is or apply 
the law incorrectly, its clear failure to properly analyze or apply the law of 
unconscionability constitutes an abuse of discretion. 
See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).
B. Arbitration and Statutory Rights
 
            
An arbitration agreement covering statutory claims is valid so long 
as the arbitration agreement does not waive the substantive rights and remedies 
the statute affords and the arbitration procedures are fair, such that the 
employee may “effectively vindicate his statutory rights.” In re 
Halliburton, 80 S.W.3d at 572. Federal courts, analyzing the enforceability 
of arbitration provisions relating to federal statutory claims, have noted that 
such contracts are not enforceable when a party is forced to “forgo the 
substantive rights afforded by the statute,” as opposed to merely “submit[ting] 
to resolution in an arbitral, rather than a judicial, forum.” Mitsubishi 
Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 
U.S. 614, 628 (1985). In the context of federal claims, either an expression of 
federal intent to exclude certain categories of claims from arbitration, see 
Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), or the 
excessive waiver of statutory rights, see Mitsubishi, 473 U.S. at 628, 
may render a particular dispute un-arbitrable. State 
courts, bound by the FAA under the supremacy clause, have more limited power, as 
the FAA preempts state laws that specifically disfavor arbitration. 
Perry, 482 U.S. at 492 n.9; see Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992) 
(holding that the FAA preempts state statutes to the extent they are 
inconsistent with the FAA’s purpose to require courts to compel arbitration when 
the parties have so provided in their contracts).
            
However, where a particular waiver of substantive remedies or other 
provision of a contract is unconscionable — independent of the agreement to 
arbitrate — it will be unenforceable even though included in an agreement to 
arbitrate. See Gilmer, 500 U.S. at 33 (“[A]rbitration agreements are enforceable, ‘save upon such 
grounds as exist at law or in equity for the revocation of any contract.’”) 
(quoting 9 U.S.C. § 2). To determine the permissibility of restrictions on a 
particular worker’s access to statutory rights, we analyze the provisions of the 
actual statute at issue; thus, to analyze the enforceability of the various 
restrictions and waivers in the employment contract at issue in this case, we 
turn to the retaliatory-discharge provisions of the Texas Workers’ Compensation 
Act, Tex. Lab. Code §§ 
451.001–.003.
C. Purpose and 
Structure of the Texas Workers’ Compensation Act’s Anti-Retaliation 
Provisions
 
            
The Texas Workers’ Compensation Act was enacted to protect Texas 
workers and employees. Fid. & Cas. Co. of N.Y. 
v. McLaughlin, 135 S.W.2d 955, 956 (Tex. 1940). The Texas Legislature 
enacted the original Workers’ Compensation Act in 1913 in response to the needs 
of workers who, despite a growing incidence of industrial accidents, were 
increasingly being denied recovery. Kroger Co. v. Keng, 23 S.W.3d 347, 350 (Tex. 2000); Tex. Workers’ 
Compensation Comm’n v. Garcia, 893 S.W.2d 504, 510 
(Tex. 1995). In order to ensure compensation for injured employees while 
protecting employers from the costs of litigation, the Legislature provided a 
mechanism by which workers could recover from subscribing employers without 
regard to the workers’ own negligence, see Kroger, 23 S.W.3d at 351, 
while limiting the employers’ exposure to uncertain, possibly high damage awards 
permitted under the common law, see Reed Tool Co. v. Copelin, 689 S.W.3d 404, 407 (Tex. 1985). In light of 
the purposes of the Workers’ Compensation Act as a whole, “[i]t is the settled policy of this State to construe 
liberally the provisions of the . . . [l]aw, in order to effectuate the purposes 
for which it was enacted.” Huffman v. S. Underwriters, 128 S.W.2d 4, 6 
(Tex. 1939) (citations omitted). As we have recently noted, “[b]ecause we should liberally construe the Workers’ 
Compensation Act in favor of the injured worker, a strained or narrow 
construction of [the Act] would be improper. Moreover, it would be injudicious 
to construe the statute in a manner that supplies by implication restrictions on 
an employee’s rights that are not found in . . . [the] plain language.” 
Kroger, 23 S.W.3d at 349.
            
The Texas Workers’ Compensation Act provides that a subscriber to the 
workers’-compensation system may not “discharge or in any other manner 
discriminate against an employee because the employee has . . . filed a workers’ 
compensation claim in good faith.” Tex. 
Lab. Code § 451.001–.001(1). The Legislature’s purpose in enacting 
section 451.001 was to protect persons entitled to benefits under the Act and to 
prevent them from being discharged for seeking to collect those benefits. See 
Tex. Steel Co. v. Douglas, 533 S.W.2d 111, 115 (Tex. Civ. App.—Fort Worth 1976, writ ref’d n.r.e.). Since recovery of 
benefits under the Workers’ Compensation Act is the exclusive remedy available 
to injured employees of subscribing employers, see Tex. Lab. Code § 408.001(a), the 
availability of remedies for retaliatory discharge protects employees’ exercise 
of their statutory rights to compensation under the Act. See Padilla v. 
Carrier Air Conditioning, 67 F. Supp. 2d 650, 664 (E.D. Tex. 1999); 
Mid-South Bottling Co. v. Cigainero, 799 S.W.2d 
385, 389 (Tex. App.—Texarkana 1990, writ denied). In accordance with these 
principles, the anti-retaliation provisions of the Act must protect employees 
even before they have actually filed a claim, because otherwise “the law would 
be completely useless and would not accomplish the purpose for which it was 
enacted. . . . [A]ll the employer would have to do in 
order to avoid the consequences of the statute would be to fire the injured 
workman before he filed the claim.” Tex. Steel Co., 533 S.W.2d at 
115.            
“The decisions of this State do not look with favor upon contracts 
waiving rights arising under the Workmen’s Compensation Law.” Huffman, 
128 S.W.2d at 6. Such waivers affect not only the individual employee subject to 
the waiver, but also the public, which bears the cost of the workers’ 
compensation program. See Holt v. Cont’l Group, 
Inc., 708 F.2d 87, 91 (2d Cir. 1983) (“A retaliatory discharge carries with 
it the distinct risk that other employees may be deterred from protecting their 
rights under the Act.”). Therefore, we have invalidated contracts that purport 
to relieve employers of their obligations under the Workers’ Compensation Act. 
See James v. Vernon Calhoun Packing Co., 498 S.W.2d 160, 162 (Tex. 1973) 
(noting that “[w]e are much impressed with the idea that there is a large 
element of public interest in the administration of [the Workers’ Compensation 
Act]”); Hazelwood v. Mandrell Indus. Co., 596 
S.W.2d 204, 206 (Tex. Civ. App.—Houston [1st Dist.] 
1990, writ ref’d n.r.e.) 
(“If . . . this balance [established by the Act] is tipped so that the 
employee’s benefits under the statute are substantially reduced, the clear 
intent of the legislature is thwarted.”). We have likewise held unenforceable 
contracts that explicitly relieve employers of tort liability, relying either on 
common law prohibitions against such contracts, see Barnhart v. Kansas City 
M. & O. Ry. Co. of Tex., 184 S.W. 176, 179 
(Tex. 1916), or upon the Workers’ Compensation Act, see Petroleum Cas. Co. v. Smith, 274 S.W.2d 150, 151 (Tex. Civ. App.—San Antonio 1954, writ ref’d) (noting that “[t]he right to workmen’s compensation 
is statutory, and cannot be abridged by private agreements or special 
applications for employment”); Clevenger v. Burgess, 31 S.W.2d 675, 678 
(Tex. Civ. App.—Beaumont 1930, writ ref’d); Tex. Employers Ins. Ass’n v. Peppers, 133 S.W.2d 165, 167 (Tex. Civ. App.—Galveston 1939, writ dism’d) (“[T]he courts will not enforce contracts which are 
either expressly or impliedly prohibited by the [Workers’ Compensation] 
Act.”).
            
This case concerns the validity of a subscribing employer’s use of an 
agreement that, in the course of requiring arbitration between the parties in 
work-related disputes, imposes a series of procedural and substantive limits on 
the employee’s rights. We must analyze the challenged limitations in light of 
the policies underlying the Workers’ Compensation Act, and the purposes of its 
anti-retaliation provisions, to determine whether they improperly shift the cost 
of injury from a subscribing employer onto its employees in contravention of the 
Act’s provisions. Cf. Lawrence v. CDB Servs., 
Inc., 44 S.W.3d 544, 550 (Tex. 2001) (noting that the agreements did not 
“shift the risk of on-the-job injuries to the employees”); see also Gentry v. 
Superior Court, 165 P.3d 556, 782 (Cal. 2007), cert. denied ___ U.S. 
___ (2008) (noting that under California law, when an employee is bound by a 
predispute arbitration agreement to adjudicate nonwaivable statutory employment rights, the arbitration 
agreement may not limit damages, discovery must be sufficient to arbitrate the 
claim, there must be a written arbitration decision, and the employer must pay 
all costs “unique to arbitration”).
V. The Challenged Arbitration Provisions
A. Limitation of Remedies
            
The Workers’ Compensation Act specifies that “[a] person who violates 
section 451.001 is liable for reasonable damages incurred by the employee as a 
result of the violation,” and that “[a]n employee discharged in violation of 
section 451.001 is entitled to reinstatement in the former position of 
employment.” Tex. Lab. Code § 
451.002(a)–(b). We have previously explained that “reasonable damages” are not 
limited to actual damages, see Azar Nut Co. v. 
Caille, 734 S.W.2d 667, 669 (Tex. 1987), but may 
include future damages, as well as exemplary or punitive damages when it is 
shown that the employer acted with actual malice in retaliating against the 
employee for filing a workers’ compensation claim. See Cont’l Coffee Prods. v. Cazarez, 937 S.W.2d 444, 454 (Tex. 1996); Carnation 
Co. v. Borner, 610 S.W.2d 450, 454–55 (Tex. 1980). 
The arbitration agreement in this case eliminates two types of remedies 
available under the anti-retaliation provisions of the Workers’ Compensation 
Act, prohibiting the arbitrator from ordering reinstatement or awarding punitive 
damages. See Tex. Lab. Code § 451.002 (providing for 
reinstatement and an award of reasonable damages). Luna contends these 
limitations render the agreement unconscionable and unenforceable because they 
prevent him from effectively vindicating his statutory rights in arbitration, 
thus undercutting the basic assumptions of the FAA. See Gilmer, 500 U.S. 
at 28 (noting that claims under other federal statutes are appropriate for 
arbitration so long as the litigant can effectively vindicate any statutory 
rights). The court of appeals agreed with Luna. 175 S.W.3d at 323–24. Although 
it noted other courts’ decisions upholding punitive-damages waivers, id. 
at 323, and further noted that preclusion of statutory remedies may not always 
portend unconscionability, id., the court held 
that the preclusion of remedies here interfered with Luna’s ability to bring his 
retaliatory-discharge claim under the Workers’ Compensation Act and thus weighed 
toward the contract’s unconscionability, id. 
Poly-America argues that the court of appeals’ decision conflicts with Pony 
Express Courier Corp. v. Morris, 921 S.W.2d 817, 822 (Tex. App.—San Antonio 
1996, no writ), and decisions of other courts indicating that limitations of 
remedies are permissible, e.g., Inv. Partners v. Glamour Shots 
Licensing, Inc., 298 F.3d 314, 318 n.1 (5th Cir. 2002). Because we view 
the anti-retaliation provisions of the Workers’ Compensation Act as a non-waivable legislative system for deterrence necessary to the 
nondiscriminatory and effective operation of the Texas Workers’ Compensation 
system as a whole, we agree with Luna that the provisions eliminating key 
remedies under the statute are unenforceable.
            
An arbitration agreement covering statutory claims is valid so long as 
“the arbitration agreement does not waive substantive rights and remedies of the 
statute and the arbitration procedures are fair so that the employee may 
effectively vindicate his statutory rights.” In re Halliburton, 80 S.W.3d 
at 572. “‘[B]y agreeing to arbitrate a statutory claim, a party does not forgo 
the substantive rights afforded by the statute; it only submits to their 
resolution in an arbitral, rather than a judicial, forum.’” Gilmer, 500 
U.S. at 26 (quoting Mitsubishi, 473 U.S. at 628). In this case, Luna 
contends Poly-America acted with actual malice in unlawfully discharging him, a 
claim for which the Workers’ Compensation Act allows punitive damages. 
See Tex. Lab. Code § 
451.002; Azar Nut Co., 734 S.W.2d at 
668. Permitting an employer to contractually absolve itself of this statutory 
remedy would undermine the deterrent purpose of the Workers’ Compensation Act’s 
anti-retaliation provisions. In creating the Texas Workers’ Compensation Act, 
the Legislature carefully balanced competing interests — of employees subject to 
the risk of injury, employers, and insurance carriers — in an attempt to design 
a viable compensation system, all within constitutional limitations. See 
Garcia, 893 S.W.2d at 521. Were we to endorse Poly-America’s position and 
permit enforcement of these remedy limitations, a subscribing employer could 
avoid the Act’s penalties by conditioning employment upon waiver of the very 
provisions designed to protect employees who have been the subject of wrongful 
retaliation.
            
Our decision in Lawrence, 44 S.W.3d 544, is fully consistent with 
this view. There, employees of a non-subscribing employer elected, after they 
were hired, to participate in an employer benefit plan that would provide 
injured employees with specified benefits in lieu of common law remedies. 
Id. at 545–46. We refused to void the agreement on public-policy grounds, 
discerning “no clear legislative intent to prohibit agreements such as those 
presented.” Id. at 545. We emphasized that participation in the workers’ 
compensation program is voluntary for employers in Texas, and that courts are 
ill equipped to weigh whether a non-subscribing employer’s particular benefits 
plan would undermine the purposes of the Workers’ Compensation Act. See 
id. at 551–53.[2] Our decision was specifically tailored to 
non-subscribing employers who elected not to participate in the 
workers’ compensation program. Importantly, we distinguished cases involving 
contracts imposed as a condition of employment, emphasizing that “[t]he 
distinction between an employment contract that requires a prospective employee, 
as a condition of the receipt or retention of employment, to agree to limit the 
employer’s liability . . . and a voluntary occupational insurance program, in 
which the employee has the option to enroll . . . is decisive.” Lawrence, 
44 S.W.3d at 550 (quoting Brito v. Intex Aviation Servs., Inc., 
879 F. Supp. 650, 654 (N.D. Tex. 1995)) (citing Clevenger, 31 S.W.2d at 
678; Barnhart, 184 S.W.at 176)).
            
This case presents just such a liability-limiting provision, imposed as a 
condition of employment, which we suggested in Lawrence would violate 
public policy. See id. Such waivers would allow subscribing employers to 
enjoy the Act’s limited-liability benefits while exposing workers to exactly the 
sort of costs — of injuries paid for by the employee for fear of retribution for 
making a claim — that the Act is specifically designed to shift onto the 
employer. The balance established by the Act is thus “tipped so that the 
employee’s benefits under the statute are substantially reduced, [and] the clear 
intent of the legislature is thwarted.” Hazelwood, 596 S.W.2d at 206. As 
we have previously refused to enforce private agreements that allow subscribing 
employers to reap the system’s benefits while burdening employees with the cost 
of injury, so too we find the provisions of the present contract — which 
substantively limit Poly-America’s liability for wrongful retaliation and 
thereby undermine the deterrent regime the Legislature specifically designed to 
protect Texas workers — void under Texas law. See Tex. Steel, 533 S.W.2d 
at 115; Holt, 708 F.2d at 91.
B. Fee-Splitting Provision
            
The arbitration agreements provide that, in the event of a claim, all 
fees related to arbitration — including but not limited to mediation fees, the 
arbitrators’ fees, costs of procuring a location for a hearing, and court 
reporter fees — will be split equally between the employer and the employee, 
with the employee’s contribution capped at an amount equal to “the gross 
compensation earned by the Employee in Employee’s highest earning month in the 
twelve months prior to the time the arbitrator issues his award.” The court of 
appeals held that this provision “weigh[ed] heavily toward a finding of 
substantive unconscionability.” 175 S.W.3d at 322. 
Poly-America argues that this was clear error: first, because the court of 
appeals improperly inferred that Luna could not afford likely arbitration costs 
based solely on subjective evidence and, second, because it failed to compare 
such costs to the expected costs of litigation.[3] Luna responds that it was Poly-America 
that failed to present evidence of the comparative cost of litigation and that 
the evidence presented was sufficient to allow an objective determination that 
the likely costs of arbitration were beyond Luna’s financial means. We begin 
with the evidentiary challenge.
1. Evidentiary Challenge
            
Poly-America claims that the court of appeals, by crediting Luna’s 
factual allegations concerning his financial inability to share arbitration 
costs, improperly applied a new evidentiary standard that will require all 
parties seeking to compel arbitration to engage in expensive discovery whenever 
a resisting party submits cursory and subjective evidence that arbitration costs 
are “unaffordable.” This evidentiary burden, Poly-America argues, is contrary to 
Texas law and policy that supports summary disposition of motions to compel 
arbitration. In response, Luna contends the facts upon which the court of 
appeals relied could have been controverted by 
affidavit or cross-examination, which Poly-America failed to do; consequently, 
the court of appeals based its ruling on the undisputed facts established by 
Luna’s affidavits. Both parties cite Anglin, 
842 S.W.2d at 269, to support their respective positions. There, we defined the 
proper circumstances under which a trial court should hold a full evidentiary 
hearing on a motion to compel arbitration:
 
Because 
the main benefits of arbitration lie in expedited and less expensive disposition 
of a dispute, and the legislature has mandated that a motion to compel 
arbitration be decided summarily, we think it unlikely that the legislature 
intended the issue to be resolved following a full evidentiary hearing in all 
cases. We also envision that the hearing at which a motion to compel arbitration 
is decided would ordinarily involve application of the terms of the arbitration 
agreement to undisputed facts, amenable to proof by affidavit. With these 
considerations in mind, we hold that the trial court may summarily decide 
whether to compel arbitration on the basis of affidavits, pleadings, discovery, 
and stipulations. However, if the material facts necessary to determine the 
issue are controverted, by an opposing affidavit or 
otherwise admissible evidence, the trial court must conduct an evidentiary 
hearing to determine the disputed material facts.
 
 
Id. 
Because the only facts Luna presented on the motion to compel were uncontroverted under this standard — Luna’s affidavits 
accompanying his original petition were neither contradicted nor challenged in 
Poly-America’s response — we believe the court of appeals acted properly in 
crediting those facts on appeal.
            
Luna attached to his original petition his own affidavit and that of an 
expert witness providing detailed estimates of the likely cost of arbitration in 
Luna’s case, and Luna’s expected share under the agreement’s capped 
fee-splitting provision based on his monthly salary (approximately $3,300.00) as 
a Poly-America supervisor. Luna described his anticipated share of the 
arbitration costs as “way more money than I can afford,” and averred that, if he 
had to pay such an amount to have his claim determined, he would be unable to 
pursue his claim against the company unless he could find an attorney willing to 
pay those fees. Luna recounted that he had attempted to retain two attorneys, 
but they had refused to represent him on a contingent-fee basis because of the 
arbitration agreement. Poly-America did not dispute these facts but asserted 
legal arguments in its pleadings that the cost provisions, as written or as 
applied, were not unconscionable under Texas law. At the hearing on its motion 
to compel, Poly-America again asserted only legal arguments in response to 
Luna’s challenge to the cost-splitting provision. There is no indication in the 
record that the trial court discredited or otherwise viewed the facts recited in 
Luna’s affidavits as insufficient; rather, on the basis of Poly-America’s legal 
arguments, the trial court granted the motion to compel. This disposition was 
consistent with our statements in Anglin 
in which we indicated that motions to compel should be decided summarily 
unless disputed issues of fact require a full evidentiary hearing. See 
id.
            
However, the court of appeals clearly differed from the trial court in 
its view of the law. It held that the trial court’s granting of the motion to 
compel — in light of Luna’s averred inability to afford his likely arbitration 
costs and the agreement’s other limitations — was an abuse of discretion. 175 
S.W.3d at 318–20. In doing so, the court of appeals properly credited the 
undisputed facts contained in Luna’s affidavits as to the total expected cost of 
arbitration and Luna’s anticipated share based upon his pre-termination monthly 
income. Id. at 319–20. Poly-America contends the court of appeals 
improperly ruled based on Luna’s subjective, and thus practically 
incontrovertible, belief that he could not afford arbitration, which does not 
satisfy this Court’s requirements of “specific” evidence to support claims of 
unconscionably expensive arbitration. See In re U.S. Home Corp., 236 
S.W.3d 761, 764 (Tex. 2007). However, the court of appeals relied not solely 
upon Luna’s belief but upon his and his expert’s specific monetary estimates, 
which provided objective support for Luna’s uncontroverted claim that arbitration costs would preclude 
his pursuit of the lawsuit. See 175 S.W.3d at 319. The court of appeals 
did not, therefore, rely solely on subjective and incontrovertible 
allegations.
2. Unconscionability of Fee-Splitting 
Provisions
            
Poly-America alternatively challenges the court of appeals’ conclusion 
that the agreement’s cost-allocation provisions favor a finding of unconscionability because the court did not consider the 
relative costs that Luna would likely incur if the case were litigated in court 
— costs that, based on Poly-America’s estimates, would greatly exceed the capped 
cost of arbitration — and Luna failed to provide any evidence of the actual cost 
of arbitration that he would bear. Although we have no doubt that some 
fee-splitting provisions may operate to discourage employees like Luna from 
seeking vindication of their rights under the Workers’ Compensation Act, we must 
agree with Poly-America that the trial court did not abuse its discretion in 
ordering arbitration in this case.
            
Courts across the country have universally condemned the use of 
fee-splitting agreements in employment contracts that have the effect of 
deterring potential litigants from vindicating their statutory rights in an 
arbitral forum. See Green Tree, 531 U.S. at 90–91. Some courts have gone 
so far as to find fee-sharing agreements unenforceable per se. See, 
e.g., Cole v. Burns Int’l Sec. Servs., 105 
F.3d 1465, 1483–85 (D.C. Cir. 1995), cited in Halliburton, 80 S.W.3d at 
572; Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1233–35 
(10th Cir. 1999); Paladino v. Avnet Computer 
Techs., Inc., 134 F.3d 1054, 1062 (11th Cir. 1998). These courts reason that 
“an employee can never be required, as a condition of employment, to pay an 
arbitrator’s compensation in order to secure the resolution of statutory claims 
. . . . [T]his would surely deter the bringing of arbitration and constitute a 
de facto forfeiture of statutory rights.” Cole, 105 F.3d at 1468; 
accord Shankle, 163 F.3d at 1235 (“Such a 
result clearly undermines the remedial and deterrent functions of . . . 
anti-discrimination laws.”).
            
We agree that fee-splitting provisions that operate to prohibit an 
employee from fully and effectively vindicating statutory rights are not 
enforceable. See Halliburton, 80 S.W.3d at 572. However, this Court joins 
the majority of other courts which — though recognizing the same policy concerns 
articulated by courts holding fee-splitting arrangements per se 
unconscionable — require some evidence that a complaining party will 
likely incur arbitration costs in such an amount as to deter enforcement of 
statutory rights in the arbitral forum. See U.S. Home Corp., 236 S.W.3d 
at 764; FirstMerit Bank, 52 S.W.3d at 
756–57. As federal courts have likewise recognized: 
 
[I]n some 
cases, the potential of incurring large arbitration costs and fees will deter 
potential litigants from seeking to vindicate their rights in the arbitral forum 
. . . . [I]f the fees and costs of the arbitral forum deter potential litigants, 
then that forum is clearly not an effective, or even adequate, substitute for 
the judicial forum . . . . [T]he burden of demonstrating that incurring such 
costs is likely under a given set of circumstances rests, at least initially, 
with the party opposing arbitration.
 
 Morrison v. Circuit City 
Stores, Inc., 317 F.3d 646, 659-60 (6th Cir. 2003); accord Bradford v. 
Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001); 
Rosenberg v. Merrill Lynch, Pierce, Fenner & 
Smith, Inc., 170 F.3d 1, 16 (1st Cir. 1999).
            
Luna contends the magnitude of the fee he could incur under the 
arbitration agreement, which he estimates to be as high as $3,300, will prevent 
him from pursuing his claim. Poly-America counters that litigation costs would 
be much higher, and therefore the arbitration agreement’s capped cost-splitting 
provision benefits the employee and cannot be unconscionable. It is true that in 
evaluating the enforceability of fee-splitting provisions, some courts take into 
account the relative costs of arbitration versus litigation. See, e.g., 
Bradford, 238 F.3d at 556 n.5 (focusing upon “a claimant’s expected or 
actual arbitration costs and his ability to pay those costs, measured against a 
baseline of the claimant’s expected costs for litigation and his ability to pay 
those costs”). However, at this stage of the proceedings, much of this evidence 
is necessarily speculative, and thus counsels against a court’s ex ante 
interference with arbitration.
            
We do not doubt that arbitration costs might be so high in a given case 
as to preclude access to the forum. But “the ‘risk’ that [a claimant] 
will be saddled with prohibitive costs is too speculative to justify the 
invalidation of an arbitration agreement.” Green Tree, 531 U.S. at 91. 
Luna has not demonstrated that the ability to pursue his claim in the arbitral 
forum hinges upon his payment of the estimated costs; to the contrary, depending 
upon the circumstances, Luna may not have to bear any cost at all, and 
Poly-America has presented some evidence that the capped cost-splitting 
arrangement may even benefit Luna. The fee-splitting provision in Luna’s 
arbitration agreement caps his share of costs at “the gross compensation earned 
by Employee in Employee’s highest earning month in the twelve months prior to 
the time the arbitrator issues his award.” (Emphasis added). Luna, however, 
presented evidence of his “highest monthly salary in the year preceding [his] 
termination from the company,” a period necessarily earlier than that 
relevant under the arbitration agreement. The record contains no fact-based 
estimation of Luna’s wages in the relevant time period and, thus, no evidence of 
his likely share of arbitration costs.
            
Just as we allow litigants who demonstrate an inability to pay costs to 
proceed with their claims in court, however, we see nothing that would prevent 
arbitrators from fairly adjusting employee cost provisions when necessary to 
allow full vindication of statutory rights in the arbitral forum. See 
Tex. R. Civ. P. 145. The 
contract presented in this case specifically provides that the arbitrator may 
modify unconscionable terms; if the cost provisions precluded Luna’s enforcement 
of his non-waivable statutory rights, they would 
surely be unconscionable for the reasons we have explained and the arbitrator 
would be free to modify them. The arbitrator is better situated to assess 
whether the cost provision in this case will hinder effective vindication of 
Luna’s statutory rights and, if so, to modify the contract’s terms accordingly. 
See Halliburton, 80 S.W.3d at 572. We conclude the trial court did not 
abuse its discretion in refusing to declare the contract’s cost-splitting 
provision unconscionable and nullify the arbitration agreement.
C. Discovery Limitations
            
The 2002 agreement provides that each party may serve on the other a 
single set of twenty-five interrogatories (including sub-parts) and one set of 
twenty-five requests for production or inspection of documents or tangible 
things. Additionally, the agreement includes limitations alleged by Luna to be 
unconscionable: (1) a limitation of each party to a single, six-hour deposition; 
(2) a prohibition on requests for admission; (3) a ban on inquiry into 
Poly-America’s finances; and (4) a confidentiality provision requiring 
confidentiality of the parties and their attorneys regarding all aspects of the 
arbitration. Luna contends these limitations make it virtually impossible for 
him to prove his claim of retaliatory discharge and render the arbitration 
agreement unconscionable.
            
Although an issue of first impression in this Court, several courts 
around the country have analyzed the enforceability of similar arbitration 
provisions limiting parties’ access to various forms of discovery. Applying a 
rule functionally equivalent to that used to analyze fee-splitting provisions, 
these courts refuse to enforce such limitations when adequate evidence is 
presented that a plaintiff’s ability to present his or her claims in an arbitral 
forum is thereby hindered. See, e.g., Hulett v. Capitol Auto Group, Inc., No. 
07-6151-AA, 2007 WL 3232283, at *4–*5 (D. Or. Oct. 29, 2007) (holding discovery 
restrictions that prohibited requests for admission or interrogatories and 
limited parties to three depositions unconscionable because they “serve to 
unreasonably withhold information from plaintiff that would otherwise be 
available through discovery, thus hindering her ability to present her claims in 
an arbitration forum”); accord Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 547 (E.D. 
Pa. 2006). Courts upholding arbitration provisions containing discovery 
limitations have done so in recognition of the same principle, but determined 
that a particular party failed to provide adequate evidence that the provisions 
“prove insufficient to allow . . . claimants . . . a fair opportunity to present 
their claims.” Gilmer, 500 U.S. at 31; see, e.g., In re 
Cotton Yarn Antitrust Litig., 505 F.3d 274, 286–87 
(4th Cir. 2007); Amisil Holdings, Ltd. v. 
Clarium Capital Mgmt., No. C06-05255MJJ, 2007 WL 
2768995, at *4 (N.D. Cal. Sept. 20, 2007) (“[Claimant] has not adequately 
demonstrated why arbitration under the AAA rules would deny it a fair 
opportunity to present its claims.”).
            
We agree with these courts that, where the underlying substantive right 
is not waivable, ex ante limitations on 
discovery that unreasonably impede effective prosecution of such rights are 
likewise unenforceable. However, because the relevant inquiry depends upon the 
facts presented in a given case and the particular discovery limitations’ effect 
upon the relevant statutory regime, we are doubtful that courts — assessing 
claims and discovery limitations before arbitration begins — are in the best 
position to accurately determine which limits on discovery will have such 
impermissible effect.
            
In this case, Luna’s expert witness testified that in most 
employment-discharge cases the employer only needs to take the plaintiff’s 
deposition, while the plaintiff generally needs testimony from a number of 
witnesses to disprove the employer’s likely defense that termination was based 
on poor performance. Additionally, the expert stated, the employee will likely 
wish to depose additional witnesses to show a pattern or practice of 
discrimination, whereas the employer typically has a ready pool of available 
employees and managers to assist in preparing for the arbitration. For these 
reasons, the expert concluded, the arbitration agreement’s discovery limitations 
“significantly reduce the plaintiff’s ability to prevail in arbitration, 
regardless of how strong a plaintiff’s case is on the merits.” We agree that if 
the discovery limitations the arbitration agreement imposes operate to prevent 
effective presentation of Luna’s claim they would be unenforceable. But at this 
point in the proceedings, without knowing what the particular claims and 
defenses — and the evidence needed to prove them — will be, discerning the 
discovery limitations’ potential preclusive effect is largely speculative. The 
assessment of particular discovery needs in a given case and, in turn, the 
enforceability of limitations thereon, is a determination we believe best suited 
to the arbitrator as the case unfolds. As with cost-sharing, discovery 
limitations that prevent vindication of non-waivable 
rights or “prove insufficient to allow [Luna] a fair opportunity to present 
[his] claims,” Gilmer, 500 U.S. at 31, would be unconscionable and thus 
not binding on the arbitrator, as the agreement in this case specifically 
acknowledges. At this point in the proceedings, though, we cannot conclude that 
the evidence presented to the trial court compelled a finding that the discovery 
limitations were per se unconscionable. Thus, the trial court did not 
abuse its discretion.
D. Prohibition on Inquiry into “Good Cause”
            
Luna claims the arbitration provision that prohibits the arbitrator’s 
ability “to apply a ‘just cause’ or ‘good cause’ standard to claims relating to 
Employee’s claims concerning his employment or separation therefrom” is substantively unconscionable because it 
prohibits, in a retaliatory-discharge case, inquiry into whether the employer 
had a valid, nondiscriminatory reason for firing the employee. Poly-America 
contends the contract cannot be read as Luna claims, and in fact does not 
prevent such an inquiry. We agree with Poly-America, and with the court of 
appeals, that this prohibition does not operate as Luna asserts; rather, the 
prohibition simply emphasizes that the contract relates to at-will employment. 
See Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 
1998). Thus, the prohibition prevents the arbitrator from substituting a “good 
cause” requirement for the “at will” standard. The provision does not, however, 
prohibit inquiry into whether Poly-America improperly terminated Luna in 
retaliation for his filing of a workers’ compensation claim. Because we read the 
provision merely to articulate an accepted rule of employment contracts, and not 
to restrict a necessary inquiry into the motivations behind Poly-America’s 
termination of Luna in this case, we agree with the court of appeals that the 
provision is not unconscionable. See In re Palm Harbor Homes, Inc., 195 
S.W.3d 672, 678 (Tex. 2006) (rejecting a claim that an arbitration provision was 
substantively unconscionable where the challenged provision “effectively 
incorporate[d] established provisions of contract law”).
E. One-Year Limitations Period
            
The arbitration agreement includes a clause that requires written notice 
of a claim to be filed within a maximum of one year from the events giving rise 
to an arbitrable claim. Luna contends this provision 
unconscionably shortens the two-year statute of limitations applicable to claims 
of retaliatory discharge. See Johnson & Johnson Med., Inc. v. 
Sanchez, 924 S.W.2d 925, 927 (Tex. 1996). However, as Luna filed this case 
well within the one-year period and thus suffered no prejudice from this 
provision, it is immaterial to Luna’s claims of substantive unconscionability.
F. Lifetime Application
            
Finally, Luna argues that the arbitration agreement unconscionably 
applies even to claims that may arise after Luna’s employment with Poly-America 
has ended and which may have nothing to do with Luna’s employment. While we can 
imagine circumstances that might present a closer question, Luna’s claims here 
concern his employment and termination, the central focus of the agreement. We 
thus agree with the court of appeals that this provision does not render the 
arbitration agreement per se unconscionable. See 175 S.W.3d at 
326.
VI. Severability
            
The arbitration agreement in this case contains a severability clause, 
which provides as follows:
 
Should any 
term of this Agreement be declared illegal, unenforceable, or unconscionable, 
the remaining terms of the Agreement shall remain in full force and effect. To the extent possible, both Employee and Company 
desire that the Arbitrator modify the term(s) declared to be illegal, 
unenforceable, or unconscionable in such a way as to retain the intended meaning 
of the term(s) as closely as possible.
 
Poly-America 
argues that, even if elements of its arbitration agreement with Luna are 
unconscionable, arbitration is nevertheless required because the unconscionable 
provisions are severable from the general agreement to arbitrate.[4] Luna contends the unconscionable 
provisions are integral to the entire contract and are therefore not severable. 
The court of appeals agreed with Luna, stating that the fee-splitting and 
remedies-limitation provisions “together deprive Luna of his opportunity to 
vindicate his claim in the arbitral forum” and concluding that “those provisions 
are integral to the purpose of the agreement and cannot be severed.” 175 S.W.3d 
at 328. The court of appeals came to this conclusion, it appears, by identifying 
the fee-splitting and remedies-limitation provisions as weighing in favor of 
unconscionability “as a whole,” but the court did not 
identify any particular provision that, by itself, would defeat the agreement’s 
purpose. See id. at 322, 324. We have determined, however, that the 
remedies-limitation provisions are individually unconscionable and void, and see 
no reason why they cannot be easily excised from the contract without defeating 
its underlying purpose.
            
An illegal or unconscionable provision of a contract may generally be 
severed so long as it does not constitute the essential purpose of the 
agreement. See Williams v. Williams, 569 S.W.2d 867, 871 (Tex. 1978); 
see also Hoover Slovacek, 206 S.W.3d at 565 
(citing Restatement (Second) of 
Contracts § 208 (1981)). Whether or not the invalidity of a particular 
provision affects the rest of the contract depends upon whether the remaining 
provisions are independent or mutually dependent promises, which courts 
determine by looking to the language of the contract itself. See John R. Ray 
& Sons, Inc. v. Stroman, 923 S.W.2d 80, 86 
(Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing Hanks v. GAB Bus. 
Servs., Inc., 644 S.W.2d 707, 708 (Tex. 1982)). 
The relevant inquiry is whether or not parties would have entered into the 
agreement absent the unenforceable provisions. See Patrizi v. McAninch, 269 
S.W.2d 343, 348 (Tex. 1954); see also City of Beaumont v. Int’l Ass’n of Firefighters, Local Union No. 399, 241 S.W.3d 
208, 215 (Tex. App.—Beaumont 2007, no pet.) (citing Rogers v. Wolfson, 763 S.W.2d 922, 925 (Tex. App.—Dallas 1989, 
writ denied)); Stroman, 923 S.W.2d at 86 
(citing Frankiewicz v. Nat’l Comp. 
Assocs., 633 S.W.2d 505, 507–0 8 (Tex. 1982)). We have previously allowed 
severance of illegal contract provisions where the invalid provisions were “only 
a part of the many reciprocal promises in the agreement” and “did not constitute 
the main or essential purpose of the agreement.” Williams, 569 S.W.2d at 
871.
            
The 2002 version of the arbitration agreement in this case is over five 
pages long and contains numerous provisions not challenged by Luna as imposing 
any unconscionable burdens: procedures for mediation, selection of a neutral 
arbitrator, filing of motions, and other general provisions governing 
arbitration procedures. We agree with Poly-America that the intent of the 
parties, as expressed by the severability clause, is that unconscionable 
provisions be excised where possible. Furthermore, it is clear by the contract’s 
terms that the main purpose of the agreement is for the parties to submit their 
disputes to an arbitral forum rather than proceed in court. See id. 
Excising the unconscionable provisions we have identified will not defeat or 
undermine this purpose, which we have upheld in the context of agreements to 
arbitrate employment disputes. See AdvancePCS, 172 S.W.3d at 608; EZ Pawn Corp., 
934 S.W.2d at 90; Cantella & Co., 
924 S.W.2d at 944.
VII. Conclusion
            
We hold invalid, as substantively unconscionable and void, provisions 
of the parties’ contract that prohibit the award of punitive damages or 
reinstatement and thus inhibit effective vindication of Luna’s 
retaliatory-discharge claim in an arbitral forum. We further hold that the trial 
court did not abuse its discretion in allowing the arbitrator to determine 
whether the fee-splitting agreement and discovery limitations — as applied in 
the course of arbitration — are unconscionable. Because we find the invalid 
remedies-limitation provisions severable from the agreement to arbitrate, which 
we conclude is otherwise enforceable, the trial court did not abuse its 
discretion in compelling arbitration. Accordingly, we conditionally grant the 
writ of mandamus.
 
                                                                        
___________________________________
                                                                        
Harriet O’Neill
                                                                        
Justice
 
OPINION 
DELIVERED: August 29, 2008








[1] 
While it is true that several of these cases pre-date the Supreme Court’s 
decision in Green Tree, they do not pre-date the authority on which the 
Supreme Court relied in noting that an order compelling arbitration and staying 
rather than dismissing the underlying litigation “would not be appealable.” 531 U.S. at 87 n.2 (citing 9 U.S.C. § 
16(b)(1)) (emphasis added). Unlike the present case, the two cases in which the 
courts denied mandamus relief from compel-and-stay orders did not involve claims 
that enforcement of the arbitration provisions would prevent the plaintiffs from 
vindicating important statutory rights. See Manion, 255 F.3d 535; McDermott Int’l, Inc., 981 
F.2d 744. In Douglas, the Ninth Circuit granted mandamus relief, 
concluding that a choice-of-law provision in the arbitration agreement would not 
allow enforcement of the agreement under circumstances that the forum state 
would deem unconscionable. Douglas, 495 F.3d at 1068.

[2] 
The Texas Legislature, exercising its policy-making role, responded immediately 
and outlawed such plans. See Tex. 
Lab. Code § 406.033(e).

[3] 
The Society for Human Resource Management Texas State Council submitted an 
amicus brief supporting Poly-America’s arguments, arguing that the court 
of appeals wrongfully failed to compare Luna’s alleged costs with the 
prospective cost of litigation. The Texas Trial Lawyers Association likewise 
submitted an amicus brief supporting Luna, arguing that unconscionability should be determined by comparing “the 
general financial condition of the claimant’s peer group” to estimated 
arbitration costs.

[4] 
The Court received briefs from amici curiae 
the Texas Association of Business and the Society for Human Resource 
Management Texas State Council, both of which argue that the court of appeals 
erred in refusing to sever the provisions it deemed unconscionable from the 
remainder of the arbitration agreement. The brief submitted by amicus 
curiae the Texas Trial Lawyers Association argues that such severance would 
be improper.